Rogers *vs.* Salmon and others.

Where the owners of a village plat induced the complainant to purchase lots therein, at very high prices, by exhibiting to him a map of their contemplated village, which stated that a dock was to be made upon a part of their property in the immediate vicinity of those lots, and such statement on the map was made for the purpose of enhancing the value of the lots sold to the complainant, and such owners, in order to induce him to make the purchase, promised and assured him that the tract of land which was to be the scite of such future village should be laid out into village lots, that the streets should be opened and graded, and that buildings should be erected in such village and such dock constructed without delay, and the complainant, relying upon such representations and promises, paid one fourth of the purchase money for the lots and gave a bond and mortgage thereon for the residue; and such owners afterwards abandoned the intention of building the dock, or of making any of the other promised improvements, whereby the value of the lots purchased by the complainant was reduced to one sixteenth of the purchase money agreed to be paid by him; *Held*, upon demurrer to the complainant's bill, that he was entitled to relief against the payment of the residue of the purchase money secured by his bond and mortgage.

This was an appeal from a decree of the vice chancellor January 25. of the first circuit, allowing the demurrer of the defendant Salmon to the complainant's bill, for want of equity. The bill was filed to prevent the collection of a bond and mortgage given to the defendants Salmon and Simonson, and afterwards assigned by them to the other defendant in this suit; and to have such bond and mortgage declared void by a decree of this court, and delivered up and cancelled.

*T. W. Clerke,* for the appellant. Whenever a wrong has been perpetrated, for which redress in a court of law is difficult or dubious, or not well defined, a court of equity will interpose. (*Hovenden,* 11.) In the case of *Fullangar* v. *Clarke,* (18 *Ves.* 483,) it is expressly declared that courts of equity will relieve against a deed, when it has been unfairly obtained, although there might not have been such a degree of fraud as to invalidate the instrument. And in this case, and also in the case of *Chesterfield* v. *Janson,* (2

*Ves.* 125,) it is declared that for this purpose, equity will presume fraud. But it will go further than this ; and although a person has a perfect remedy at law to recover for the breach of an agreement connected with any written obligation, yet if he cannot avail himself of it as a defence to an action on the obligation, or even if there should be any difficulty in his doing so, he can come into chancery to have the obligation cancelled. (*Reed* v. *Bank of Newburgh*, 1 *Paige*, 215.) The case of *Gallagher* v. *Brunel*, (6 *Cowen*, 346,) is not against the appellant. That was an action in a court of law for a false affirmation as to the credit of a third person. Courts of equity take a different view of fraud from courts of law. They are not bound down by general rules. In new cases they are at perfect liberty to apply such new principles as their enlightened conscience may dictate. (*Hovenden*, 11, 13, 15.) What may be considered fraud according to the immutable principles of morality, will be considered fraud by a court of equity, where circumstances are shown bringing the case within the principles upon which its peculiar jurisdiction is founded. (1 *Maddock's Ch.* 205.) The question whether fraud is confined to the misrepresentation of a subsisting fact is determined by the case of *Beaumont* v. *Dukes*, (*Jacobs' Rep.* 422, 4 *Cond. Ch. Rep.* 195.) Courts of equity will undoubtedly in many cases refuse their aid in enforcing specific performance, upon slighter circumstances of impeachment than they would venture to set aside or annul an instrument. But wherever fraud appears, whether in the form of *suppressio veri* or *suggestio falsi*, chancery will just as readily set aside the contract as it would refuse aid in enforcing its performance. (*Seymour* v. *Delancey*, 3 *Cowen*, 445. 1 *Mad. Ch.* 208.) Courts of equity will go still further, and if a man upon a treaty for any contract makes a false representation, whether knowingly or not, by means of which he puts the party bargaining under a mistake upon the terms of bargain it is a fraud, and is relievable in equity. (1 *Mad. Ch. R.* 209, 211, *and the cases there cited.*)

*J. H. Magher*, for respondent.    Complainant charges that the defendants, or some of them, agreed with him to do certain things which they have not yet done ; and because they have not performed the acts they agreed to do, he alleges that their agreement in that behalf was a fraudulent representation.    This is attempting to make a breach of contract a misrepresentation.    A representation cannot be made of a thing in futuro ; to be a representation at all, it must apply to a matter or thing past or in esse.    To represent that something shall be done hereafter, is to promise it, and the party acting on such promise gives credit to it, whereby it becomes an agreement, and is not the subject in itself of fraud ; for failure to perform an agreement is not fraud.    In this case the defendants are said to have promised to make certain improvements, and that they have not done so.    But does it follow that they may not yet make those improvements ?    It is not alleged that they were to perform this promise within any specified time. And suppose the mortgage should be declared void and given up, and the defendants should afterwards make these ? If the agreement of the defendants is a binding and valid one, it can be enforced in a court of law, and the complainant can recover all damages he may have sustained in consequence of its breach.    There is no allegation of insolvency or want of responsibility of either of the defendants. And the complainant's remedy is perfect at law, either by suit for his damages, or in defence of any proceedings which may be instituted to collect the bond given by him.    The general allegations of fraudulent representations, where no particular charges are made, and where such allegations are not sustained by any statement of facts in the bill, cannot entitle the complainant to avoid the securities he has given.    Nor can he rely upon the assertion that the property he has purchased is of less value than he supposed, and that he gave too great a price for it ; that fact, if so, might perhaps be urged in defence of a suit on the bond, under a plea of partial failure of consideration, but not otherwise.    The complainant shows that he

Rogers
v.
Salmon.

knew all about the property, its situation and improvement; that a map was made, and by that map he understood fully the condition and character of the property he was buying.

THE CHANCELLOR. As the respondent has not thought proper to answer the allegations in this bill, every thing stated therein which goes to show that the complainant has a claim to relief of any kind, in this court, must be taken as true. From those statements, it appears that during the prevalence of the speculating mania, which recently afflicted so many of the citizens not only of this state but of the whole union, the complainant was induced to purchase of the defendants, Salmon and Simonson, three small lots in a lithographic village to be located upon Staten Island, at the price of sixteen hundred dollars; which lots are now of no value except for the purpose of pasturage, and are not worth more than one sixteenth of the sum he agreed to pay for them. One fourth of the purchase money was paid down by the complainant, and the bond and mortgage in question were given by him, to Salmon and Simonson, to secure the payment of the residue of the $1600, with interest thereon. The bill further states, that Salmon and Simonson exhibited a lithographic map of the future village; on which map it was stated that a dock would be made upon a part of the property, in the immediate vicinity of the lots sold to the complainant; which statement on the map was made for the purpose of enhancing the value of the property; and that in the negotiation of the sale between them and the complainant such map was referred to as a constituent part of the contract, and as explanatory of the intentions of the vendors in relation to the property. The bill also states, that in order to persuade the complainant to make the purchase they promised and assured him that the tract of land which was to be the scite of the village, and of which the lots sold to him formed a part, should be laid out into lots; that the streets should be opened and filled up or graded with-

out delay ; that buildings should be erected, and the dock constructed, &c. It is also alleged, that in making the contract for the purchase of his three lots the complainant relied entirely upon those representations of Salmon and Simonson, and other representations of theirs that the consideration which he agreed to pay was a just and proper consideration for the benefits which thereby purported to be secured to him as the purchaser. It is hardly necessary to add, that the bill likewise shows that the contemplated village has not come into existence ; that no dock has ever been built, nor have any other improvements been made in this embryo village which is still in *le sein du temps ;* and that Salmon and Simonson have abandoned the intention of building the dock, or of making any of the other contemplated improvements upon the property.

The question presented for the consideration of the court upon this bill certainly is not without its difficulties. It cannot be said to be a case of original fraud ; as the bill does not state that the assurances and promises of the vendors, as to the building of the dock and the laying out and opening of the streets, &c. were not made in good faith at the time these lots were sold. But if they have since found it would not be for their interest to lay out and improve the contemplated village, and to build the dock, in conformity with the promises and assurances which they held out to the complainant to induce him to give this extravagant price for some of the village lots, it certainly does appear to be inconsistent with the principles of equity, as well as of sound morality, that they should now compel him to pay this bond and mortgage ; after he has already paid four times as much as the lots are actually worth if those contemplated improvements should not be made.

The case of *Donelson* v. *Weakley*, (3 *Yerg. Rep.* 178,) decided in our sister state of Tennessee, in 1832, in which the opinion of the court was delivered by Chief Justice Catron, now one of the judges of the supreme court of the United States, appears to be an authority directly in favor of sustaining the complainant's bill in the present case.

There, the owners of the site of a prospective town sold the lots therein at public auction ; and, in the language of the bill in that case, one of their agents at the sale, in a speech to those who were present, " portrayed the future glory of the place in such poetic strains that the complainant was transported." The lots were sold on a credit of one, two, and three years. And the agent, as the proof in the cause showed, just before the sale commenced, promised and assured the bidders that the owners of the town plat would make a canal and basin and locks connecting the contemplated town with the Tennessee river ; the location of which canal and basin was marked upon the town plat exhibited at the sale ; and the benefit which the town would derive from the same was urged upon the bidders, by the auctioneer, as enhancing the value of the property. Lots to the amount of $140,000 were sold ; and the complainant Donaldson purchased ten lots, for which he bid about six thousand dollars. He gave his notes for the purchase money, payable in three annual instalments, as specified in the terms of sale, and took a bond for a deed of the lots when the last instalment should be paid. There was no doubt that at the time of the sale it was the intention of the vendors to go on in good faith and make the improvements. But it was denied, in the answers of the defendants, that the making of the contemplated improvement formed any part of the agreement ; or that any time was fixed for the completion of the canal and basin, which they expected to make out of the moneys to be raised from the purchasers at the sale. And nothing was said on that subject in the writings which were executed between them and the purchasers. The agents of the vendors commenced the canal and basin, and expended about $10,000 thereon. And they did not abandon it until it had become apparent that the town would never be settled, and the canal of no use ; as the lots were then of no value as town property. The court, however, decided that the purchase having been made upon the faith of the representations made at the sale, and the vendors not having gone on and completed the contemplated improvements within

a reasonable time thereafter, the complainant was entitled to be released from the contract and to have his notes cancelled.

Upon the authority of that case, and on the equity arising from the several matters stated in this bill, I shall reverse the decision of the court below, and overrule the demurrer with costs. But I express no opinion as to the nature or extent of the relief which the complainant will be entitled to if all the facts stated in his bill shall eventually turn out to be true ; as the case made by the bill may be materially varied by the answer and the proofs.