## THE FARMERS' LOAN AND TRUST COMPANY and B. W. ROGERS *vs.* HUNT.

On the 1st of October, 1842, R. gave H. a contract for 82½ acres of land, at $100 per acre, payable in installments as follows: $500 on the 1st of November, 1842; $500 on the 1st of May, 1843; $1000 on the 1st of May, 1844; $1000 on the 1st of May, 1845; $1000 on the 1st of May, 1846, and the balance in four equal annual payments thereafter, with annual interest from May 1, 1843. It was also agreed that when $2000 were paid, R. should give deeds of " certain parts " of the tract, and receive bonds and mortgages. R. also stipulated that he would " see that Stanley-street was continued and . opened to said H.'s northern line." And H. agreed to continue and open the same to the road on the south line of lot No. 37. And at the expiration of the term of the contract, the payments having been fully complied with, R. agreed to convey the premises to H. In an action brought by R. upon the contract, before all the payments had become due; *Held,*

The Farmers' Loan and Trust Company *v.* Hunt.

1. That as the final deed was not to be executed until all the payments were made, so R. was not obliged to continue and open Stanley-street until such payments were completed; and that his omission to open the street was no defense to the suit.

2. That the action having been commenced before the last payment had become due, and before H. was entitled to a conveyance, he was not entitled to recoupe the damages sustained by him in consequence of the failure of R. to continue and open Stanley-street.

3. That this was not a case in which the law would infer that the parties intended the street should be opened within *a reasonable time* after the making of the contract.

4. That the meaning of the provision in the contract respecting *interest*, was not that interest from the 1st of May, 1843, should be paid only upon the installments which became due after May 1, 1846, but that all the installments which should become due after the 1st of May, 1843, should draw interest from that date. MITCHELL, J. dissented.

THIS was a motion by the plaintiffs for a new trial, on a bill of exceptions. In October, 1838, the plaintiff, B. W. Rogers, conveyed a large tract of land to the Farmers' Loan and Trust Company, in trust for his creditors. In October, 1842, with the assent of the company, he contracted with the defendant Hunt to convey to him a part of the tract, supposed to contain 82½ acres, at \$100 per acre. It in fact contained only $79\frac{69}{100}$ acres, and was by the agreement, to be paid for accordingly; so that the whole purchase money was to be \$7,969. The money was to be paid, \$500 on the 1st of November, 1842, \$500 on the 1st of May, 1843, "one thousand dollars on the first day of May, annually for three years, from and after the 1st day of May, 1843, and the balance in four equal annual payments from and after the 1st day of May, 1846, with annual interest from the 1st day of May, 1843." The agreement then contained this clause : " And when two thousand dollars shall have been paid, said Rogers agrees to give deeds of certain parts of said tract, and receive bonds and mortgages by said Hunt, paying all expenses of such bonds and deeds and recording. It is also further agreed that said Rogers is to see that Stanley-street is continued and opened to said Hunt's north line, and said Hunt agrees to continue and open the same, three rods wide, to the road on the south line of lot No. 37. And at the expiration of

the term of this contract, the payments having been fully complied with," Rogers agreed to convey the land to Hunt or his assigns. A further agreement was added, that Hunt was to have possession of the house and so much of the barn as would be necessary to stable his horses, and store their feed, from 1 November, 1842, to 1 April, 1843, at such rent as should be awarded by arbitrators, said amount to be allowed to Mills, a tenant, in reduction of his rent to 1 April, 1843; at which last day Hunt was "*to take possession of all the above described premises.*" Hunt was to occupy a garden, door yard, and privilege in the barn yard, from November, 1842, to April 1, 1843, Mills to occupy the rest of the land until the expiration of his lease, viz. April 1, 1843.

The complaint alleged that Hunt had paid on said agreement the following sums at the several times mentioned, and no more, viz: On the 1st day of October, 1842, he gave a note for $500, due on the 1st day of November then next, which was paid on the 14th day of October, 1842, and on which payment interest was to be allowed until the first day of May then next; that on the 6th day of December, 1842, he paid $100, on which interest was to be allowed until the 1st day of May then next. That on the 12th day of December, 1842, he paid $100. On the 18th day of April, 1843, he paid $274,65, which, with interest on the several payments up to the 1st of May, 1843, amounted to $1000. On the 26th September, 1843, he paid in cash $959,50, and there was allowed $40,50, making $1000 dollars for the third installment on the said agreement. On the 22d day of February, 1844, he gave a bond and mortgage to secure the payment of $900, to be applied on the said agreement. That the residue thereof remained wholly unpaid; that Hunt had occupied the premises since the said agreement was made, and still occupied them, but wholly neglected and refused to pay so much of the said unpaid balance of purchase money as had become due; that the plaintiffs were both interested in and entitled to portions of the said balance so due, and united in this action in order to recover the same; that they had always been ready and willing to convey the premises to Hunt, by

good warranty deeds as required by the said agreement, on his paying the sums due therefor, and complying with the said agreement on his part, and were still willing and offered to do so upon such payment being made; that the amount now remaining due on the said agreement was the sum of $7,485,63, with interest from the 1st day of May, 1849, and that the further sum of $1,330,31 would become due thereon on the 1st day of May, 1850. The plaintiffs therefore demanded judgment for the said sum of $7,485,63, due on the said 1st day of May, 1849, with interest from that day, together with their costs.

The defendant, in his answer denied that the plaintiffs had been ready and willing to convey the said premises by good warranty deeds, on the payment by the defendant of the sums due on the said contract, and alleged that the plaintiffs claimed more than the balance due on the contract, and he denied that the sum of $7,485,63 was due on said agreement, and that the sum of $1,330,31 would become due thereon on the 1st day of May, 1850. The defendant further alleged that the lands described in the complaint, were at the time of the making of the said agreement, located south of the village of Mount Morris, and adjoining the same, and that they were convenient of access to said village, and for these reasons were valuable for village lots, and that the said lands were purchased by the defendant for the purpose of subdividing the same into smaller lots and making sales thereof, as was well understood by the agent of the plaintiff Rogers, when the said agreement was made ; and that therefore it became important to the defendant in furtherance of this object, that Stanley-street in said village should be extended to the north line of the lands described in the said agreement, and that he should have deeds of certain parts of said tract after the payment by the defendant of the sum of $2000, according to the provisions of the agreement. But that the said Rogers had not caused the said Stanley-street to be opened, nor had he given Hunt deeds of certain parts of said tract, and received bonds and mortgages therefor, although he had been often requested to make and deliver said deeds since the payment by the defendant of the sum of $2000 on the con-

tract, and the defendant offered and was willing to assign to said Rogers bonds and mortgages, and did assign to him bonds and mortgages to secure large portions of said money, which by the agreement the said Hunt was bound to pay ; by reason whereof the defendant had lost the opportunity of making sale of divers portions of said tract, and had otherwise suffered damage to a large amount, to wit, to the amount of $5000, which he claimed and insisted should be allowed to him by way of recoupment against the sum actually due and unpaid from the defendant, on the contract.

The plaintiffs put in a reply, denying the allegations in the answer. The cause was tried at the New-York circuit in November, 1851; before Justice Edwards. The plaintiffs proved the execution of the deed from Rogers to the Farmers' Loan and Trust Company, dated Jan. 30, 1847, and a declaration of trust, of the same date, executed by that company to Rogers, declaring the trusts by which the lands embraced in the deed were held by the Trust Company; also the contract mentioned and set forth in the complaint; and the plaintiffs proved the amount due upon the contract.

The plaintiffs then rested, and the counsel for the defendants moved for a nonsuit for the following reasons. 1st. That it did not appear that Stanley-street had been opened by the plaintiff Rogers according to the terms of said contract. 2d. That it appeared from the plaintiffs' evidence, that when the contract was made, Rogers had no title to a large part of the premises described in said contract. This motion was denied by the court, and defendant's counsel excepted. The defendant then called as a witness, George W. Branch, who testified that Stanley-street in the village of Mount Morris, had never been opened to the north line of the land described in the contract. George Hastings on the part of the defendant also testified, that at the request of the defendant, on the 30th day of April, 1845, he prepared a deed of a certain portion of the premises described in said contract, which he gave to Stephen Summers, who was agent for B. W. Rogers, at that time residing in Mount Morris, and in the name of the defendant, demanded a conveyance

of the premises described therein, and at the same time offered to secure the payment of such part of the purchase money unpaid on such contract, as should be in proportion to the value of the premises described in the deed, as compared with the unconveyed portion of the premises described in the contract, and that he made another similar demand on the 8th day of December, 1845, and that Rogers, at the time of these demands, resided in the city of New-York. The defendant then called as a witness George W. Branch, who testified that a street had been opened on the premises in question, by the defendant, on an extension of the line of Stanley-street, in the village of Mount Morris ; that the land lying on both sides of said street was suitable for village building lots. The witness then testified to certain facts tending to show the damage the defendant had suffered, in consequence of the failure of the plaintiff Rogers to open said street, and also in consequence of his neglect to convey the portions of said premises for which a deed had been demanded of said Summers.

The testimony being closed, the justice charged the jury, as follows : That the plaintiff Rogers was not, by the contract, bound to open Stanley-street to the north line of the premises described therein, until all the payments had become due; and inasmuch as this action was commenced before the last payment had become due, the defendant was not entitled to recoupe in this action his damages, in consequence of the failure of said Rogers to open said street. That the portion of the contract providing that said Rogers should give deeds of certain parts of said tract, after the defendant had paid two thousand dollars, was void for uncertainty. That the plaintiffs were entitled to recover the unpaid portion of the purchase money mentioned in said contract which was due at the commencement of this action, with interest on the whole amount unpaid from the first day of May, 1843. To this charge and each portion thereof, the counsel for the defendant excepted. The jury, under direction of the court, rendered a verdict for the plaintiffs for the sum of $7372,87.

*Wm. Curtis Noyes,* for the plaintiffs.

*Geo. Hastings,* for the defendant.

EDWARDS, J.   This action is brought upon a contract made by Rogers, one of the plaintiffs, with the defendant, for the sale of a tract of land.   The contract is dated on the 1st day of November, 1842, and provides that the consideration money shall be paid in certain installments, and that, after all the payments shall be made as agreed by the parties, Rogers shall execute a warranty deed of the premises to the defendant.   The action was commenced before all the payments had become due.

The defenses set up were : First, that Rogers had not performed that part of the contract in which he agrees that when two thousand dollars shall have been paid, he will give deeds of *certain parts* of the tract agreed to be sold ; and, second, that he had not caused Stanley-street to be continued and opened to the defendants' north line, and that the defendants should be allowed the damages sustained by reason thereof, by way of recoupment.   The justice before whom the cause was tried decided that that part of the contract on which the claim first set up by the defendant was founded, was so uncertain and unintelligible that no effect could be given to it, and this decision seems to have been acquiesced in ; at least no objection was made to it upon the argument.   In reference to the second claim of the defendant, the judge charged that inasmuch as this action was commenced before the last payment had become due, the defendant was not entitled to any recoupment in this action

It will be observed that no time is mentioned when Rogers is to cause Stanley-street to be continued and opened, and this can only be ascertained by reference to other parts of the contract, taken in connection with the act to be done.

The opening of the street, so far as we have the means of knowing, could be of no benefit to the defendant, except as incidental to his ownership of the land agreed to be conveyed to him ; and, as he could derive no advantage from the performance of this part of the contract until he received, or was en-

titled to receive a conveyance, so he could sustain no damage from its non-performance. It would seem, then, to be a reasonable inference, that the parties intended that the defendant should have the benefit of the incident when he was entitled to the benefit of the principal, that is, when he was entitled to a conveyance of the premises.

It is contended, however, on the part of the defendant, that in this case the law will infer that the parties intended that the street should be opened within a reasonable time after the making of the contract.

There are many cases in which, the parties having failed to agree upon a time of performance, the inference will and must be that they intended that the act agreed to be done should be performed within a reasonable time; as where a party agrees to deliver an article of merchandise, or other property, at a particular place, and at a certain price, and no time of performance is mentioned, this rule of construction must be adopted, otherwise the contract could not be enforced. But is it necessary to resort to this rule when the time, though not mentioned, can, as in this case, be ascertained from the nature of the thing contracted to be done?

But suppose that we adopt the rule of construction contended for; how, then, ought the case to be presented to the jury? It will certainly not be contended that the court should simply state that the parties must have intended that the act should be performed within a reasonable time; and the jury must say whether it was so performed. The judge at the circuit would be obliged to do more than this. It would be necessary for him to state the principles which the jury should adopt in ascertaining whether or not the act was done within a reasonable time. The rule on this subject which was laid down by Baron Alderson, in the case of *Ellis* v. *Thompson*, (3 *Mees. & Welsh.* 445,) is undoubtedly the proper one. He says that "the correct mode of ascertaining what reasonable time is, is by placing the court and jury in the same situation as the contracting parties themselves were in at the time they made the contract; that is to say, by placing before the jury all those circumstances which

were known to both parties at the time the contract was made, and under which the contract itself took place." If we apply this rule to the present case, it seems to me that the only instructions which the court could give to the jury, would be that they must ascertain the time when the performance would be advantageous, and the non-performance injurious to the defendant, and must consider that as the reasonable time for performance intended by the parties; or, in other words, that in this case, the reasonable time within which the street, which was the mere incident to the land to be conveyed, should be opened, would be the time when the principal thing to which the incident was to be attached, was agreed to be conveyed. But suppose that according to the rule which should be laid down by the court, the jury would be obliged to infer that the street was to be made before the land was to be conveyed, what would be the rule of damage? The defendant not being the owner of the land, he could not sustain any more than a nominal injury; and of course his damages would be merely nominal. It seems to me, then, that according to any rule of construction which has been suggested, we are led to the conclusion which was adopted by the judge at the circuit, that before the last payment had become due, and the defendant had become entitled to a conveyance, he could not recoupe his damages.

There were two cases referred to upon the argument by way of analogy, but it seems to me that they cast but little light upon the question before us. In the case of *Rogers* v. *Salmon*, (8 *Paige*, 559,) the bill alleged that during the prevalence of the speculating mania which existed some years since, the defendant had been induced to purchase three small lots in a lithographic village at the price of $16,000; which lots were, at the time of filing the bill, of no value except for pasturage; and not worth more than one-sixth of the sum agreed to be paid for them. One-fourth of the purchase money had been paid, and a bond and mortgage had been given to secure the payment of the residue of the $16,000, with interest thereon. The bill contained other allegations, and set forth representations of numerous things which were to be done, but which never were done, and

which imposed upon the credulity of the defendant. The chancellor seemed to consider this a case of great hardship, as it clearly was, although he said it was not without its difficulties, and, as he stated, it appeared to him " to be inconsistent with the principles of equity, as well as of sound morality, that the plaintiff should compel the defendant to pay his bond and mortgage, after he had already paid four times as much as the lots were worth, if the contemplated improvements should not be made." He then referred to the case of *Donelson* v. *Weakley,* (3 *Yerg. R.* 178,) and said that upon the authority of that case, and upon the equity arising upon the several matters contained in the bill of complaint, he overruled the demurrer which had been interposed, and he concluded : " But I express no opinion as to the nature or extent of the relief which the complainant will be entitled to if all the facts stated in his bill shall eventually turn out to be true." There is an essential distinction which destroys all analogy between the two cases cited and the one before us ; and that is, that in these cases the party seeking relief had received a conveyance of the property, and the relief was granted upon purely equitable grounds, arising out of the extreme hardship of the case.

The next exception was to that part of the judge's charge in which he stated that the plaintiffs were entitled to recover the unpaid portion of the purchase money mentioned in the contract which was due at the commencement of the action, with interest on the whole amount unpaid from the 1st day of May, 1843. The contract, it will be observed, was made in the month of October preceding the 1st of May, 1843, and after making certain provisions as to payments before that date, declares that one thousand dollars shall be paid on the 1st of May, annually, for three years, from and after the 1st day of May, 1843, and the balance in four equal annual payments, from and after the 1st day of May, 1846, with annual interest from the 1st day of May, 1843. It seems to me that the obvious meaning of this part of the contract is, not as was contended by the defendant's counsel, that interest from the 1st of May, 1843, should be paid only upon the installments which became due after the 1st day

of May, 1846, but rather that all the installments which should become due after the 1st of May, 1843, should draw interest from that date.

I think that the motion for a new trial should be denied.

ROOSEVELT, J. The leading question in this case is, was the judge right in charging the jury that Rogers was not bound to open Stanley-street, until all the payments had become due, and that, the time thus allowed not having expired, he was not chargeable with any breach of his obligation, or with any damages by way of recoupment for such supposed breach. Rogers, it appears, on the 1st of October, 1842, gave Hunt a contract for 82½ acres of land in the town of Mount Morris, Livingston county, at $100 per acre, payable by installments, as follows : $500 on the 1st November, 1842; $500 on the 1st May, 1843; $100 on the 1st May, 1844; $1000 on the 1st May, 1845; $1000 on 1st May, 1846 ; and the balance in four equal annual payments thereafter, with annual interest from 1st May, 1843 ; thus making the whole consideration payable on or before 1st May, 1850. It was also agreed that when $2000 were paid Rogers should give deeds of " certain [without saying what] parts" of the tract, and receive bonds and mortgages. Rogers also stipulated that he would "see that Stanley-street is continued and opened [without saying when] to said Hunt's north line, and said Hunt agrees [without saying when] to continue and open the same to the road on the south line of lot No. 37." " And at the expiration of the term of this contract, the payments having been fully complied with, said Rogers hereby agrees to convey, and authorize his heirs and assigns to convey to said Hunt, or his heirs or assigns, the above described premises," &c. Hunt was to have partial possession on the 1st November, and full possession on the 1st April after the contract. On this statement it would seem obvious that Rogers was not to make the final *deed* until *all* the payments were completed; and what reason, in the absence of express stipulation, is there to imply that he was to make the continued *street* before such fulfillment ; and that too

The Farmers' Loan and Trust Company *v.* Hunt.

without any request (for·none is pretended) on the part of Hunt
to do so?

Ordinarily, I admit, where no time is mentioned, a reasonable
time is presumed. But this reasonableness, in all cases, de-
pends upon the nature of the transaction. Is it reasonable then
in this case to say that Rogers was to incur the expense of open-
ing the street before he knew whether Hunt would fulfill even
the first payment? Certainly not. At which payment, then,
was it to become reasonable, if at any before the last? Rogers
was not to part finally with his land till then; and why
should he part with his money, in causing a street to be contin-
ued? Hunt, after the first payment of $500, might have become
bankrupt or have abandoned the contract. Was Rogers, unless
he so expressly agreed, to take the risk of these casualties? If the
land, unpaid for, came back to him, it might well be that a street
cut through it, instead of being an improvement, besides its cost,
would have been in his eyes a positive injury. Still, he might,
if he saw fit, have· stipulated to do the act, or rather "to see"
the act done; and in that case the court would have said *stat
pro ratione voluntas.* In the absence, however, of any expres-
sion to that effect, it seems to me unreasonable to imply that he
intended to make the street, any more than the deed, before
"the payments were fully complied with."

At all events, if any time other than *that,* is to be judicially
interpolated into the instrument, and a supposed omission of the
parties to be thus supplied by the court, on the ground of a
doubtful reasonableness, it should be accompanied at least with
a qualification quite as reasonable—that the act was to be done
by Rogers when reasonably *requested* by Hunt. And as no
such request was made, no default in that view was incurred.

The charge therefore was correct, and. a new trial ought not
to be granted.

MITCHELL, J. One question raised was whether the defend-
ant was to pay interest from May 1st, 1843, on the three several
sums of $1000, which were to be paid annually for three years
from that·day; and also on the balance of the purchase money;

or to pay such interest only on the balance. The defendant contends that it was to be paid only on the balance; and he refers as part of his argument, to the conduct of the parties shortly after the contract was made, as stated in the complaint, namely, that on the 14th of October, 1842, he paid $500; that in December, 1842, he paid two sums of $100 each; and in April, 1843, he paid $274,65; on all of which sums interest was allowed to May 1st, 1843; and that on the 26th of September, 1843, he paid $959,50, on which he was allowed $40,50; making it thus equal to $1000, calculating interest to May 1st, 1844.

Where such an ambiguity as this exists, it is a better guide to the true meaning of the parties to ascertain what is the ordinary and reasonable agreement in such cases, than to look to acts which might have been influenced by particular circumstances. Here, by the agreement, Hunt was not to have possession of any part of the premises without paying rent, except the garden, door yard and a privilege in the barn yard, until April 1st, 1843. He was to have the house and part of the barn on the 1st of November, 1842; but for that he was to pay rent. The parties then considered that the possession of any part of the premises (except these small privileges) subjected Hunt fairly to the payment of rent. That repels the idea that the parties meant that he was afterwards to occupy the whole for three years from May 1st, 1843, without paying rent, or its ordinary equivalent, interest. When they were so particular as to require the payment of rent for the use of the house and part of the barn, for five months, they did not mean to allow the interest on $3000, part of the consideration of about 80 acres of land, to remain unpaid for several years, and the purchaser to be in full possession of the premises. Interest is deemed, usually, the equivalent for the possession of the premises; and when the agreement fairly admits of the interpretation that interest was to be paid from the time, or about the time, possession was to be taken, that is the most reasonable interpretation. As full possession was to be given on the 1st of April, 1843, it is not reasonable to infer that the interest to be paid

The Farmers' Loan and Trust Company *v.* Hunt.

from May 1st, 1843, was not only on the balance referred to, but also on the three sums of $1000 each, to be paid in three years from that date. The acts of the parties referred to, allow the defendant interest on all sums that he paid before May 1st, 1843, only to that date, and so are consistent with this construction. The payment of $959,50, in September, 1843, was credited to the defendant as $1000 paid in May, 1844. That may have been, not as showing that he was entitled to that allowance, but by agreement, in consequence of payment *in advance.*

The judge was right in allowing interest from the 1st of May, 1843, on all the sums then unpaid.

The more important question is, as to the time at which the plaintiff was bound to cause Stanley-street to be opened to Hunt's north line. The judge, at the circuit, held that the plaintiff need not do this until the whole purchase money should be paid. It is right to look at the purposes of the parties, as shown in their agreement, to discover their meaning. Stanley-street is spoken of as a street to be *continued* to Hunt's north line. This indicates that it was then in existence, but not yet extended far enough to reach Hunt's line. Hunt, in purchasing, required Rogers to agree to cause the street to be *continued* to Hunt's north line ; and Rogers also required Hunt to agree then to *continue* and open the same street from that line, three rods wide, to the *road* on the south line of lot No. 37 ; which the boundaries show was the southern boundary of the land bought by Hunt. Thus, both parties made it a matter of importance that Stanley-street, a street then in existence, should be continued to this land, and through it, to another road. They thus showed that they considered the access to this property by that street to be of considerable advantage to this property ; and the access to the road on the south line of the purchase, to be of equal advantage to Rogers' other adjoining property. Hunt, too, was to have actual possession, and under a contract which was intended to require Rogers to give deeds of some parts of the premises, as Hunt should sell them. Whether this intention was so indefinitely expressed as not to bind Rogers, or the

contrary, it still shows the meaning of the parties. It could not, then, have been the intention of the parties, that a street which they deemed of such value to this and adjoining property, might be kept closed by either for seven years after Hunt should take possession. And that must have been their intention if the plaintiffs were not bound to open the street until all the payments should become due. The result would be, that for these seven years, Hunt would be in the possession of the land, and have no use of the road, which he deemed so valuable as to make a special part of his contract; and that during all that time he could not sell to advantage any parts of his land, which would be benefited by the street, although he had provided in the agreement that on sales being made, he might pay the plaintiff in mortgages. This is contrary, as well to what is usual, as to what is reasonable.

The contract also shows, by implication, that there was not to be this long delay, in making the street. Here the parties first agree that Rogers shall sell the property; next, they treat of the payments, in order, to the last; then they provide that when $2000 shall have been paid, Rogers shall give deeds of certain parts; next they state their agreement as to the opening of this street; and lastly, they provide that Rogers is to convey the premises at the expiration of the time of the contract, if the payments shall have been fully complied with. When any thing is to be done at a future or remote day, they so expressly state. They state when each payment is to be made, from 1st of November, 1842, to 1st of May, 1843; and so annually to 1st of May, 1850. They state when deeds are to be given for parts of the property; namely, when $2000 shall be paid. Then they state the agreement as to this street, and after that, they state what is to be done "at the expiration of the time of this contract;" namely, the payments having been fully complied with, Rogers was to convey to Hunt. It is not that at the expiration of the time of this contract he was to convey to Hunt and open the road; but he was then to do nothing but convey. The inference is that the parties meant that Rogers should, before this, do all that he agreed to do, and not that he was not to com-

ply with his agreement to open the street, until the payments should all be made. The agreement of Rogers to open the street coming in order before the agreement as to what he shall do at the expiration of the time of the contract, is also some *slight* evidence that the former was to precede the latter in the performance.

The time, then, in which Rogers should have made the street, would be a reasonable time after the possession of the land was to be given; and Rogers having failed to do this, he is liable for damages, which the defendant may recoupe in this action. This is the more reasonable, as Rogers having made an assignment in trust for creditors, the remedy of the defendant by action might be ineffectual.

In *Rogers* v. *Salmon*, (8 *Paige*, 559,) the plaintiff had bought three lots at Staten Island, of the defendants, and given them a mortgage for part of the purchase money. At the time of the sale, the defendants had represented, by maps and otherwise, that they were about to erect a dock in the immediate vicinity of their lots, and to lay out the adjoining and neighboring lands in village lots. These promissory representations were not made as part of any written agreement, but yet were in such form that the chancellor considered they restricted the defendants, in equity, from enforcing a contract which was entered into partly on account of them, unless the defendants would carry out those representations. They had not done so, when the bill was filed to prevent any suit on the bond and mortgage. It does not appear whether the mortgage was then due or not. The chancellor sustained the bill, and adopted as authority the case of *Donelson* v. *Weakley*, (3 *Yerg*. 178.) In that case the representations at the sale, by *map*, and otherwise, were, that a canal should be made, to connect the town, in which the lots sold were situated, with the Tennessee river. The canal was commenced, and $10,000 expended on it, and was then abandoned, but not until it had become apparent that the town never would be settled, and that the canal would be of no use. The chancellor says, approvingly, that " the court decided that the purchase having been made upon the faith of the represen-

tations made at the sale, and the vendors not having gone on and completed the contemplated improvements *within a reasonable time thereafter*, the complainant was entitled to be released from the contract and to have his notes cancelled." (8 *Paige,* 564, 5.)

It was equally important in this case, that the street should be made within a reasonable time after the contract was made or possession given, as it was in the other two cases that the dock should be made and village lots and streets laid out, or the canal be constructed in a reasonable time after the contract. It was said that Hunt could not make his part of the street until he got his deed, as he would have no title until then; and so it could not be intended that Rogers should make his part before that time. Hunt could make the street. He had the equitable title to the land, and was in possession, and had paid part of the purchase money. His control of the property, under these circumstances, could not be disturbed, if he paid the rest of the purchase money; and especially could he not be prevented from making a street, which by the contract he was required to make at sometime.

The court held that that part of the agreement, which required Rogers to give deeds of certain parts of the tract, and to receive bonds and mortgages, was void, for uncertainty. If this be correct, the consequence would seem to follow that no action can be maintained *on* the contract. This was a material part of what Rogers was to do, and must have been a valuable part of the inducement to Hunt to agree to pay the price which he agreed to pay. If the seller can avoid fulfilling all that he is to do, on account of its uncertainty, he cannot possibly sustain an action on the contract, against the buyer. He cannot get rid of all that he is to do, and still compel the other party to perform what that other agreed to do. So, if he gets rid of a material part of what he is to do, for a like cause, he cannot enforce the contract made by the other; the consideration for which was, in part, his doing what he escapes doing. He may recover for the value of the thing received or enjoyed by the other party, if that do not exceed the price which the other was

to pay; but that is entirely different from a recovery on the contract. Although this last matter was not argued at the general term, it is material to consider it, if a new trial is to be ordered.

A new trial should be granted; costs to abide the event.

New trial denied.

[NEW-YORK GENERAL TERM, December 5, 1853. *Edwards, Mitchell* and *Roosevelt,* Justices.]