“Sedgwick, J.
These facts were proved. The
defendants’ minutes have the following memorandum, viz. : March 8, 1870, ‘Bishop Mcllvaine nominates Rev. Morris A. Tyng to the Griswold professorship, which was unanimously confirmed on the motion of Dr. Burr.’
“ There was a yearly salary paid at irregular times. There is no evidence as to the rate of compensation or the times when it was to be paid, sufficient to show the intention of the parties, in respect of the intended duration of the employment.
“ Certain officers cf the defendant, who notified the plaintiff of his appointment, said to him, when he was in Ohio (although there was no evidence that they had any authority to make or modify the contract on behalf of the defendant), that ‘ they wished me to come out and take possession at the opening of the spring term in April, but I declined to do that, but agreed to come out and to take possession to date from the commencement- on July 1.’ He again testifies: ‘It was stated distinctly at that time, that I would not accept under any condition except that the appointment *255 should date from July 1.’ And again : ‘ It was agreed that the period of my connection with the seminary should date from July 1,’ and also, ‘that I would accept the appointment to date from July 1.’
“ The practice of the seminary was, on one of the first days of October, persons presented themselves for admission and were examined. The course of instruction then began. There was a new term that began on April 1, and continued until the last days of June, when there was the examination for graduation and the commencement exercises. The vacation followed to October 1. Through the vacation the professors did no service for the seminary.
“The practice was, that the trustees, at the annual meeting, held in June, made all the arrangements for the year to come. The meeting that was to be held in June, 1873, fell through for want of a quorum, and a new meeting was called for July 8.
“On July 8, 1873, the trustees resolved to close the seminary, and expressing their entire respect for the character, learning and- teaching of the plaintiff, declared his professorship vacant. The trustees at the same time directed that an amount equal to the salary to October 1 should be paid the plaintiff, and that to that day he might use the house attached to his professorship. The reason for this action was, that only two students had attended the seminary through the year. Plaintiff received notice of this action of the trustees on or about July 8, 1873. The seminary was entirely closed by the trustees, and there was no duty thereafter to be done by the plaintiff. He received the money and used the house, as voted by the trustees, but has never waived any claim he may have to be paid further amounts for salary.
“His claim is, that there was an employment from year to year; that the contract was entire as to each, year; that, by the contract, these years began July *256 1, when the plaintiff took his seat; that it was not ended by notice before July 1, 1873, and, therefore, continued down to July 1, 1874, and that a notice, after July 1, 1873, could not bring the contract to a close before July 1, 1874.
“There was no proof of usage to aid the construction of the contract. The nature of the contract, however, was so far determined by law that it could not be affected by testimony (which was offered, but excluded) that it was the custom of the seminary in question to retain professors during good behavior ; we must mainly rely upon the implication in the situation of the parties, and in the facts to which the contract was to be applied.
‘‘ The general rule that a hiring in general, that is, for an indefinite or undescribed time, not expressed to be at will, was to be deemed a hiring for a year, arose from natural equity. ‘ If the hiring be general, without any particular time limited, the law construes it to be a hiring for a year, upon a principle of natural equity, that the servant shall serve and the master maintain him throughout all the evolutions of the respective seasons, as well when there is work to be done, as when there is not ’ (1 Bl. Comm. 15 Eng. ed. .p. 425).
“This general rule is to be applied tocases that have the same character .as those in respect of which it was originallymade, viz., domestic servants or servants in husbandry. It is applicable to cases like clerks, where there is nothing in the kind of service to give one day more significance than another, and it would be unjust to one side or the other to choose a space of •time less than a year for the duration of the contract. But evidently, while this justice is preserved, the rule has no regard for the particular day on which the space of time ends, beyond the demands of uniformity and certainty.
*257 “ If this justice be preserved, and the circumstances clearly show that both sides know the employment was to do a certain thing, which might call for a time shorter or longer than a year by a few days, rather than for. devotion of time generally, to repeated instances of service, then, certainly it would be just to put an end to the contract by notice ending with the day of the completion of the thing to be done. In case where, as matter of fact, the time required for the completion of the service was about a year, and was required year after year, it would be just to make a renewal of the yearly service, subject to an ending of the same kind as the first yearly service, although it might not end on the same calendar date. The fact is that at the expiration of the first term there is by a continuance merely in employment, a tacit renovation of the original contract, to use the words of Lord Mansfield, in reference to a somewhat analogous subject (Right v. Darley, 2 T. R. 162), rather than a renewal of right as to the time the first contract endured.
All general rules have to be restrained by their fitness to the special instances, and this has been said specifically of the present general rule (Baxter v. Nurse, 6 Mann. & G. 935 ; 1 C. & R. 10 [1844]; Fancraw v. Oakford, 5 H. & N. 635 [I860]). This last case says that there is no inflexible rule that a general hiring ‘is a hiring for a year. Each particular case must depend upon its own circumstance.’ The same must be true in reference to the day when- the employment is to end. It is not an inflexible rule that such day is to be found by a calculation of the end of a year from the day of the employment.
“An illustration is found in cases of tenancy from year to year. The general presumption is of a year from the date of the commencement of the tenancy, but that is affected in cases where the tenancy begins *258 in the middle of a quarter by the- agreement of the parties that rent is payable on the quarter days, on the fact of such payments, and according to the circumstances it will be held that for the purpose of fixing the time for notice to quit the year is to date from the-previous or the succeeding quarter day (Doe v. Johnson, 6 Esp. 10; Doe v. Stapleton, 3 C. & P. 275 ; Adams on Ejectment, Am. ed. of 1821, p. 135).
“In the present case both parties knew that the service called for was to be in the future regular, although the day of the beginning of the employment was July 1. The nature of a cqurse of instruction was that it should begin with the admission of the student in October, and be conducted by the same professor through a time when each day’s instruction would have its influence on the instruction of other days. It could not have been meant that such employment should end on April 15, say, of a succeeding year, if accident had called for the employment of a professor on that date of a former year.
“It would be against their common interests and their duty to students to make an agreement that contemplated a sudden departure of a professor in the middle of a term, or even of a year. The nature and necessity of the case imply more than the accidental date of the employment.
“I am of opinion that by the contract the plaintiff was employed from July 1 to October 1, 1870, so as to entitle him to the salary at that time, and then and thereafter from year to year, and that the employment could be ended by reasonable notice given for October 1. The resolution of July 8, communicated on the 10th, was substantially such a notice, and that the plaintiff’s claim for compensation was satisfied. by the payments made under the resolution.
“ For these reasons I was in error in directing a verdict for the plaintiff, which, however, was understood *259 to be a formal direction, and the motion for a new trial should be granted ; the order to be entered nune pro tunc as of the term when the motion was made.”
On the second trial the same facts appeared as on the first, with this additional evidence: “Between the commencement in June and the instruction of classes, I had a great deal to do with reference to my professorship ; it was necessary, during that time, to make the formal arrangement of the studies and classes for the coming year: the arrangement as to how much time should be spent in the seminary in each department by each class, the hours of instruction, the choice of books, and the preparation of notes and memoranda for furnishing material for instruction for the year ; then also my own studies for the instruction of the year. ’ ’
On the second trial, defendant’s counsel, at the close of the evidence adduced on plaintiff’s behalf, moved to dismiss, the complaint on the ground that plaintiff had not proved a cause of action.
The motion was denied, and defendant’s counsel duly excepted.
Defendant’s counsel then, without offering further evidence, moved that the court direct a verdict for the defendants, and read from the opinion of Judge Sedgwick, in reference to the' granting of a new trial in this case.
The motion was denied, and defendant’s counsel duly excepted.
The court charged the jury, at the request of plaintiff’s counsel, “that the contract between plaintiff and defendants, subsequent to July 1, 1873, was a contract for the then current year at a salary of $1,300 per annum, and could , only be determined by defendants (plaintiff not assenting to a termination of it), by reasonable notice expiring with the then current year.”
Wash & Holt, attorneys, and 8. P. Wash, of counsel, for appellant, urged:
I. There was no evidence on the part of the defense; all the testimony was that of the plaintiff and his witnesses, which was not in any way attacked, and the case should not therefore have been left to the jury. The plaintiff was engaged as professor in 1870, the only evidence of the employment being the following entry in the minutes of the board of March 8 : “Bishop Mcllvaine nominated Rev. Mor *261 ris A. Tyng to the Griswold professorship, which was unanimously confirmed on motion, of Dr. Burr.” This was the only record evidence of the original employment. Plaintiff entered upon his duties, and continued until July, 1873, when the professorship was vacated. His case required him to show an employment from year to year, dating the year from July 1. To do this, he proved the resolutions of the board, passed January 18, 1872, reducing the salaries of the professors, as follows : “From and after July 1, 1872, the yearly salaries to be paid by the board shall be as follows,” &c., and a resolution of June 10,1873, restoring the previous rate for the year then about ending. This, with the entries on the account books, showing that 'his salary dated from July 1, 1870, is the evidence bearing on the question of an annual employment to date from July 1. The plaintiff himself testified and introduced certain correspondence and conversations with Bishop Mcllvaine and others. The evidence of the discharge of the plaintiff by vacating his chair was the following: A meeting. of some members of the board, not a quorum, at which a committee of conference was appointed to confer with the plaintiff as to the advisability of his leaving the board free at their next meeting “to make new arrangements for the coming year,” plaintiff’s own account of his conference with the committee, and the final resolutions, passed July 9, vacating his professorship. These recited “ a suspension of the work of the seminary on account of the want of students.” Plaintiff’s position was, that, before this was done, on July 9, that is, before there had been a formal act of a full board, he had entered on the next year, and that a contract for that year had taken effect. There was no question of fact upon this evidence to submit to the jury. Either on the conceded facts plaintiff was employed for a year from July 1, 1873, or he was not. If he was, he could not be discharged by *262 any notice, however reasonable; if he was not, there was no legal necessity for any notice. It seems clear, therefore, that the charge was based upon an erroneous view of the rights of the parties.
*260 To which charge the defendants’ counsel then and there duly excepted.
The question whether such reasonable notice had been given was by the charge left to the jury to determine.
The plaintiff’s counsel requested the court to charge that: “If the jury found that the original agreement was that the plaintiff should report for duty on July 1, 1870, and that his salary should be paid from that date, and that he did so report for duty, and that his annual salary was reckoned and paid by defendants from that date, it is to be presumed, in the absence of express proof to the contrary, that the year for which plaintiff was first employed, began on that date, and that every subsequent annual renewal of the employment dated from the same day, i. e., July 1, in each year.”
The court so charged, “ if the jury believe that was the commencement of the year.”
To which charge the defendants’ counsel then and there duly excepted.
The jury rendered a verdict in favor of the plaintiff. A motion for a new trial on the judge’s minutes was made and denied, and an order to that effect entered. From the order denying the motion for a new trial, and the judgment entered upon the verdict, the present appeal was taken by the defendant.
*262 II. Though the salary of the plaintiff was payable yearly, there was no contract from July 1 to July 1 in each year. It is quite clear that at the commencement in each year, any professor would have felt free to leave. If any annual contract can be implied from the facts, it is a contract for the scholastic year, which ended with the dispersion of the students in July, and commenced again in October (see opinion of Sedgwick, J.). If plaintiff was paid, as he was, for his entire service in 1872-3, no new year began until the opening of the seminary in October, 1873, and it did not then open.
III. Assuming that the previous year ended on July 1, 1873, and that no formal action of the board was taken before July 9, the mere lapse of the nine intermediate days without service rendered to, and accepted by, the corporation, cannot create a contract for another year. It is not like a holding over of a tenant. A contract cannot be forced upon a party, especially upon a corporation, and when it is said that a contract is implied, it is meant that the evidence shows that both parties understood that a contract had been agreed to. This cannot be said in the present case. Plaintiff testified that the first duty of instruction he performed was in October, 1870 ; “I did no duty as instructor after the commencement in June, 1873.” No contract can be implied for another year from this state of facts,
IV. The evidence of the correspondence and conversations of plaintiff with Bishops Mcllvaine and Bedell was erroneously received. This evidence was commented on in the charge as “illustrating” the contract. There was no evidence that these persons had a right to bind the corporation. The contract "which was *263 sought to be proved by the conversation, that is a contract made in March, 1870, for an engagement for a year, to begin in the succeeding July, would not have been valid unless in writing, and the' contract in fact made was shown by the records of the board.
Y. The verdict was also against the weight of evidence, and a new trial should be granted.
O. P. Buell, attorney, and of counsel, for respondent, urged :
I. As to exceptions to the refusal of the justice on the trial to dismiss the complaint, or to direct a verdict for the defendant. The two exceptions present the same question. 1. The case was properly submitted to the jury, upon the question whether the defendant gave the plaintiff reasonable notice of its election to terminate the employment. In all cases where different inferences may fairly be drawn from the testimony by different minds, the question of reasonable notice—like reasonable time, reasonable care and diligence, and other kindred questions, falls within the legitimate province of the jury. In Railroad Co. v. Stout, the rule is thus stated: “ Whether the facts be disputed or undisputed, if different minds may honestly draw different conclusions from them, the case is properly left to the jury” (17 Wall. 657). And by Selden, J., in Bernhard v. Rens. & Sar. R. Co., thus : “If there are inferences to be drawn from the proof, which are not certain and incontrovertible, they are for the jury” (1 Abb. Ct. of App. Dec. 134). In Taylor v. Brydeh, Kent, Ch. J., says : “ The question of reasonable notice is a compound of law and fact to be submitted to a jury” (and see cases cited in opinion, 8 Johns. 173, 177; see also Brink v. Hanover Ins. Co., Ct. of Appeals, March, 1880, 9 Reporter, 518 ; 3 Kent Comm. 67; Farmers’ Loan & Trust Co. v. Hunt, 16 Barb. 514; Whitbeck v. Holland, 45 N. Y. 13, 18, Grover, J. ; Wakeman v. Gowdy, 10 Bosw. *264 213 ; Bartlett v. Robinson, 39 N. Y. 187; Thnrber v. Harlem, &c. R. Co., 60 Id. 321, 331, Allen, J.; Viner v. N. Y. Steamship Co., 50 Id. 23).
II. Even though it be assumed that the contract ran from October 1, in each year (and not from July 1), still the question remains, was a notice served on plaintiff on July 10, for October 1, following, a reasonable notice under the circumstances proved in the case ? Plaintiff proved, for instance, that at such time (July 10) the boards of trustees of almost all the seminaries and colleges in the land had adjourned, after completing their arrangements for the ensuing year. And plaintiff found it impossible, therefore, after so late a notice, to obtain similar employment elsewhere. Moreover, he had been invited from New York to Ohio, with his family, on the reasonable expectation of permanent employment. Defendant offered no evidence to mitigate these facts.
III. The conference in June was not notice. The committee which waited upon plaintiff in that month, was authorized simply to obtain his views, as to the “advisability” of leaving defendant’s trustees free to make new arrangements, i. e., for closing the seminary. He declined to accede to the proposition, and expressed himself emphatically against this policy. He therefore had every reason to believe, and he did believe, the matter would end there. His professorship was specially endowed, and a perversion of its funds, as proposed, to other objects, would be a breach of trust. He knew that similar attempts, in former years, to close the school, had invariably failed. The inference from these proved facts was, at all events, for the jury to draw.
IY. The case was properly submitted to the jury to determine upon all the evidence, what was the contract between the parties. (1) The contract was not in writing. The resolution of defendant’s board of trust *265 ees of March 8, 1870, merely “confirmed” Bishop Mcllvaine’s nomination of plaintiff as professor. The nature and terms of the contract could only be inferred from facts aliunde. The question, therefore, what was the contract, became a question for the jury (First Nat. Bank of Springfield v. Dana, 6 W. D. 208 ; S. C., in Court of Appeals, 9 W. D. 822 ; and see cases cited, supra, under Point I.) (2) The opinion of Judge Sedgwick renders unnecessary a further discussion of the legal presumptions as to contracts of hiring. His discussion of the subject is full and complete. To the accuracy of the legal principles he enunciates, we fully accede. A general hiring is presumed (in the absence of modifying circumstances) to be for a year ; and when the relation is continued after the expiration of the first year, this hiring is thereby construed to be from year to year, terminable by either party upon reasonable notice, having reference to the expiration of the current year (Bleeker v. Johnson, 51 How. Pr. 380; Beeston v. Collyer, 12 J. B. Moore, 552; G. & B. S. M. Co. v. Bulkley, 48 Ill. 189, 192; Laughran v. Smith, 75 N. Y. 205, 209, 210). But, as remarked by Judge Sedgwick, “ there is no inflexible rule.” And, as stated by Pollock, B., in Fairman v. Oakford (5 H. & N. 635), quoted in Judge Sedgwick’s opinion: “Each particular case must depend upon its own circumstances and the inference from these circumstances he held to be a matter for the jury (Bank v. Dana, supra; White v. Hoyt, 73 N. Y. 505; 2 Parsons on Cont. 5 ed. 492, note 5, and cases cited).
V. Counsel "for appellant is obliged to contend (in support of these “Exceptions”), that there is no evidence from which a jury could intelligently and honestly infer that the contract existing July 10, 1873, was a contract for one year from the 1st of that month: He insists that the court should have taken the case away from the jury, and decided as matter of law, that *266 the current yearly contract would have expired on October 1, 1873. (1) It will not be disputed, we suppose, that the date of the commencement of the first year’s employment determines the date of every succeeding annual renewal of the employment (Authorities cited under Point IV., supra; opinion of Judge Sedgwick, and cases cited by him). (2) How, about the only fact relied upon by appellant, as indicating that the annual employment dated from October 1, is that the students came together for instruction, after the summer vacation, on the first Thursday in October —some day from the 1st to the 7th of October. The day of the opening of the fall term, it is undisputed, was a' matter within the exclusive control, from time to time, of the trustees. An omission of proof on the first trial led Judge Sedgwick to remark as follows : ‘1 Through she vacation the professors did no service in the seminary.” This omission, thus called to our attention, we have supplied on the present trial, and have shown that important services were rendered by the professors during the vacation. (2) On the other hand, the evidence is, we submit, abundant and conclusive, that July 1, and not October 1, was the date of the original year’s employment, and of every successive “ annual renewal of such employment. 1st. It was so expressly agreed to between plaintiff and defendant’s chief executive officers—their president and vice-president. Plaintiff’s testimony on this point is explicit and direct. He is not impeached nor contradicted, although it was open to defendant to call Bishop Bedell as their witness, had they been able to contradict the plaintiff. As the general and chief executive officers of the defendant corporation, Bishops Mcllvaine and Bedell were authorized, in furtherance of the ordinary and legitimate purposes of the corporation, under the resolution of March 8, 1870, to close with plaintiff upon the terms and details of the con *267 tract thus authorized (McCarty v. Selingroove, &c. R. Co., 87 Penn. St. 332; Fayles v. National Ins. Co., 49 Mo. 380 ; A. & A. on Corp. § 231). Their authority to bind the corporation “ may be implied from facts and circumstances (A. & A. on Oorp. § 283). But the uncontroverted evidence in the case shows that the acts of its chief executive officers in the premises, were fully ratified and affirmed by defendant’s board of trustees (Id. § 284; 2 Kent Comm. 291, 292). 2d. Plaintiff reported for duty at the annual commencement in 1870, and took part at a faculty meeting. He was thereafter subject to defendant’s orders. 3d. Plaintiff was, at the outset, employed at an “ annual” salary, to wit: $1,300 a year, and a house. This is the undisputed testimony, and the express allegation in defendant’s answer. 4th. All the resolutions of the board, and all their accounts with plaintiff, show that their business year—their year for the employment of professors and the payment of their salaries—began July 1 (2 Kent. Comm., supra). 5th. There was but one regular meeting of the board during the year, to wit: just before the commencement, in the latter part of June, when all the arrangements for the ensuing year were made.
VI. As to the exceptions to the judge’s charge. The exception at fol. 120 is not well taken. The employment could only be terminated by reasonable notice, expiring with the then current ,year, whenever that year expired (Judge Sedgwick’s opinion, and cases cited by him; Decker v. Hazell, 26 How. Pr. 528 ; Loughran v. Smith, 75 N. Y. 205, 209, 210).
VII. The proposition excepted to at fol. 121 is a mere corollary from the preceding one. Moreover, the qualification added by the learned justice practically reduced it to nothing.
VIII. The proposition excepted to at folio 122 is unquestionably sound. The justice was careful that *268 the jury should not mistake its proper application (Costigan v. Mohawk & Hudson R. R. Co., 3 Den. 609 Vail v. Jersey Little Falls Co., 32 Bard. 564; Nations v. Cudd, 22 Tex. 550 ; Cook v. Sherwood, 3 Fost. & Fin. 729 ; Whittle v. Frankland, 2 Best & Smith, 49).
IX. The defendant has had a fair trial, and the judgment and order appealed from should be affirmed,, with costs.
By the Court.—Freedman, J.
The respondent, in his points, acknowledges that, so far as this case is concerned, the opinion delivered by Judge Sedgwick on a former occasion is a full and complete discussion, of the legal presumptions as to contracts of hiring, and that the accuracy of the legal principles enunciated by him is fully acceded to. The respondent’s contention is, that, notwithstanding all that was said, the question of reasonable notice was not, at the last trial, determinable as one of law, but was properly left to the jury as one of fact, and that therefore the verdict cannot be disturbed. In this I think the respondent and the learned judge, who presided at the last trial were mistaken.
Upon plaintiff’s own showing it appeared that the actual work of each year commenced in the month of October; that in the month of June of each year there was an annual meeting of the board of trustees, at which, as plaintiff well knew, provision was made for carrying on the work of the scholastic year next ensuing, and. at which it was customary, as plaintiff also well knew, to select the professors who were to perform duty during the coming year, and to fix their salaries ; and that it was not until after the completion of these arrangements that the salaries thus fixed as so called annual salaries commenced to run from July 1 of each year.
It further appeared that at the meeting of the board *269 •called for June 10,1873, a quorum did not attend, but that a committee was appointed to confer with the plaintiff ; that by said committee the plaintiff was informed that as there were no students, the board did not feel justified in employing him for the next year; and that finally, at a meeting of the full board, held'July 9, 1873, a resolution was adopted vacating the chair held Iby the plaintiff, of which the plaintiff had notice on the 10th or 11th of July.
Upon this uncontroverted state of facts it may be a question -whether there was a legal necessity for any notice; but upon the assumption that there was, the notice given, coupled as it was with a tender of the use, of the house then occupied by the plaintiff until the following October 1, and an offer to pay him up to the day last named at the rate at which he had been paid, which terms the plaintiff subsequently accepted, was sufficient. Plaintiff himself seems to have so regarded it, for with the exception of an additional small sum then claimed by him for some repairs and improvements on the house, which was allowed to him, he neither then, nor for years thereafter, made any further claim, but voluntarily removed from the said house.
Defendants’ motion for the dismissal of the complaint should therefore have been granted.
The judgment and order appealed from should be reversed and anew trial ordered, with costs to appellant to abide the event.
Curtis, Oh. J., and Sedgwick, J., concurred.