# N. Y. COMMON PLEAS.

HENRY BLEEKER, Jr., agt. JOHN JOHNSON and CHARLES JOHNSON.

*Contract for hiring for one year—failure to produce an important witness.*

Where a general engagement of a servant, "at a salary of fifteen hundred dollars a year, payable weekly," unaffected by any other considerations growing out of the custom of the place, the conduct of the parties, or other extraneous evidence disclosing a contrary intention, constitutes a contract of hiring for the year.

Where both defendants were present and took part in the contract of hiring the plaintiff, which the plaintiff testified was for one year at the rate of $1,500, payable weekly, and one of the defendants testified that he "made the engagement with the plaintiff at the rate of fifteen hundred dollars a year, payable every week; I made no yearly engagement with him. He agreed to come to us at a salary of fifteen hundred dollars a year, payable weekly."

*Held*, that it appearing that the other defendant was within reach, and whose evidence could be procured, but was not produced on the trial as a witness, the jury had a right to infer that his non-production was caused by the fact that his evidence would not be beneficial to the defendants.

Judgment for plaintiff affirmed.

*General Term, May*, 1876.

*A. Oakey Hall*, for appellant.

*Edward Gebhard*, for respondents.

ROBINSON, *J.* — The controversy between these parties involved the question of fact whether or not the employment of the plaintiff as clerk for defendants was for a year, or during the will of the parties.

The contract was made between plaintiff and John Johnson, the other defendant, Charles Johnson, being present. Plaintiff testified on his direct examination that they agreed to accept his services for one year at the rate of $1,500, payable weekly. On his cross-examination, on being asked what "they said," he answered: "They said this: They would give me $1,500 for the first year, and after that they would increase it."

Mr. John Johnson, one of the defendants, testified on their behalf: "I made the engagement with him, with Mr. Bleeker, at the rate of fifteen hundred dollars a year, payable every week; I made no yearly engagement with him." This is a mere legal conclusion, as he testified further: "He agreed to come to us at a salary of fifteen hundred dollars a year, payable weekly."

Under the well established rule in the reported English cases, assuming defendant's statement of the bargain to be the correct one, the hiring would, under a general rule prevailing there, be held to have been for a year (2 *Chitty on Contracts*, 841 ; 11 *Am. ed.*, 841 ; *Breston* agt. *Collyer*, 4 *Bing.*, 309 ; *Turner* agt. *Robinson*, 5 *Barn. & Ald.*, 789 ; *Hullman* agt. *Bontois*, 2 *Car. & P.*, 510 ; *Fawcett* agt. *Cash*, 5 *Barn. & Ald.*, 904 ; *Williams* agt. *Byrne*, 7 *Ad. & Ell.*, 177 ; *Earl of Mansfield* agt. *Scott*, 1 *Clark & Fin.*, 319), although the conduct of the parties, as well as other circumstances, may remove the presumption that such was their intention. In *Story on Contracts* (*sec.* 962, *c and d*) the English rule is accepted as the law in this country. It is recognized in 1 *Parsons' Contracts* (518), and no decisions are discovered that infringe upon it.

The principle of the above authorities establishes that a general engagement of a servant "at a salary of fifteen hundred dollars a year, payable weekly," unaffected by any other considerations growing out of the custom of the place, the conduct of the parties, or other extraneous evidence disclosing a contrary intention, constitutes a contract of hiring for

the year. If the parties intended the compensation should only be at that rate, and it had been so specified, such express indication of their intention would leave no room for inference that the engagement was not at the mutual will and pleasure of the parties. Under this legal aspect of the effect of the bargain testified to by the defendants' witness, John Johnson, any error committed by the judge in his charge as to the adverse presumption to be drawn from the absence of Charles Johnson was harmless. But assuming the contrary, and that the term of plaintiff's service was to be determined by the jury, the absence of the witness Charles Johnson, who was present at the hiring, warranted the remark from the judge, under the circumstances of the case, that an unfavorable presumption might be drawn therefrom.

It is the general rule that such presumption may be entertained by the jury where a party is in possession of, or has the means or power of producing, testimony that would be favorable to him if he fails to do so. This was the substance of the judge's observation to the jury in relation to the non-production by the defendants of Charles Johnson, who it appeared was in the city, and whose testimony they might have procured. The judge, speaking with reference to this and the absence of one of the parties to the action and transaction, stated that it was the duty of every party, in presenting his case before the jury, to produce every witness who could convey any light to the jury which would aid them in considering the evidence, and when a witness was within reach and whose evidence could be procured, they had a right to infer that the non-production of the witness is caused by the fact that his evidence would not be beneficial to the party who was bound to produce him.

The criticism made to this charge by the learned counsel for the defendants is, that it failed to distinguish between the character or equality of the unpresented evidence and the quantity; that in an expected conflict of witnesses as to a fact, the non-production of some absent witness, in mere corrobora-

tion of the fact testified to by the witnesses produced and sworn on the trial, was not within the rule stated by the judge. This distinction finds no warrant in any decision cited to sustain it. It is ingenious, but I think hypercritical, so far as it has any application to this case. The defendants, upon coming to trial, well knew what the plaintiff had already sworn to, as to the terms of hiring, in verifying his complaint, and that while he alleged it to be for one year, they with an equal solemnity of an oath had alleged his hiring to be but from week to week (*see answer, fol.* 10, *verified by Charles Johnson*). It is impossible to comprehend how the testimony of the absent witness, who took part in the making of the contract, and who, in respect to what the defendants did or said, must necessarily have been part and parcel thereof, would not have a material bearing on the case. What each partner did or said on that occasion when acting "*per my et per tout*" was not only an act on his own behalf, but for his firm. Some expressions may have been used personally by himself which, in plaintiff's testimony, were comprehended in these terms: "They said this, they would give me $1,500 for the first year, and after that they would increase it. Q. This is what they said? Yes."

As both parties were present and acting, and conversations were had by both, it would seem to have presented a case in which both were important, if not necessary, to conclusively establish a positive contradiction to plaintiff's testimony, and the remark of the judge did not contravene the rule even as asserted by the defendant's counsel. But the restriction of such a rule through a distinction as between the quality and quantity of evidence seems not maintainable. Whenever by the production of any evidence that may be stronger or more conclusive — of additional and more credible or cogent witnesses or instruments of evidence bearing upon a controverted fact, by which the testimony might be made more apparent or convincing — the imputation of weakness, in the case of the party who, without excuse, withholds it, may well

---

Bleeker agt. Johnson.

---

be suggested and a presumption indulged to the prejudice of his cause.

Where the testimony not produced is that of parties indifferent to the controversy, it is the like duty of plaintiff and defendant to call them; and no presumption could ordinarily exist as against either party for failure to call them. The rule as applied in this case was, however, for failure of the defendants to call one of themselves, who, it is shown, was a party to and could have testified directly as to the transaction at issue. It does not appear that any error occurred on the trial that calls for a reversal.

Judgment affirmed with costs.

J. F. DALY, J., concurred.