CHARLES M. ADAMS, Respondent, *v.* JAMES G. FITZPATRICK et al., Appellants.

Where one enters into the employ of another, under a contract for a year's service, at a yearly salary, and continues in the employment after the expiration of the year, the presumption is that the parties have assented to a continuance of the service for another year at the same salary.

In an action by an employe under such a contract, to recover damages for an alleged breach thereof, the making of the original contract and the continuance in the employment after the expiration of the year was proved and found by the referee, who then found, as a conclusion of law, that "the agreement for services and for payment therefor was, by implication of law and the acquiescence of the parties, renewed for the period of a year." *Held*, this finding, although classified as one of law, was in effect one of fact, and for the purpose of upholding the judgment should be so regarded.

Reported below, 24 J. & S. 580.

(Submitted October 7, 1890; decided January 13, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made April 15, 1889, which affirmed a judgment in favor of plaintiff entered upon the report of a referee

This action was brought to recover damages resulting from an alleged breach of a contract of employment.

The facts, so far as material, are stated in the opinion.

*Donohue, Newcombe & Cardozo* for appellant. It was error to hold that a new contract for one year was to be implied. (2 R. S. chap. 7, § 2, subd. 1.)

*James B. Dill* for respondent. The original contract of hiring having been fully executed on both sides, presents no discussion under the Statute of Frauds. (*Hodge* v. *Newton*, 13 N. Y. S. R. 140; *Dodge* v. *Brandall*, 30 N. Y. 294.) The first contract being fully performed and, therefore, valid, the retention of the plaintiff by the defendants in their employ was equivalent to a new hiring at the same salary for one year. (*Wallace* v. *Devlin*, 36 Hun, 275; *Greer* v. *P. T. Co.*, 18 J. & S. 517; *Hodge* v. *Newton*, 13 N. Y. S. R. 140; *N. H.*

*I. Factory* v. *Richardson,* 5 N. H. 296; *G. & B. S. M. Co.*
v. *Bulkley,* 48 Ill. 102; *Conway* v. *Starkweather,* 1 Den. 113;
*Schuyler* v. *Smith,* 51 N. Y. 309; *Coudert* v. *Smith,* 118 id.
304, 311; *Talamo* v. *Spitzmiller,* 30 N. Y. S. R. 186; 22
Hun, 91, 93; 12 id. 259, 261; *Laughran* v. *Smith,* 75 N. Y.
205; *Bleeker* v. *Johnson,* 51 How. Pr. 380.) The plaintiff
used diligent effort to find other employment. (*Howard* v.
*Daly,* 61 N. Y. 62.)

RUGER, Ch. J. The defendants were manufacturers and
dealers in corsets in New York. The plaintiff was a salesman
in the same business, and on or about October 15, 1885, con-
tracted, orally, with the defendants to enter into their employ
as a salesman at the rate of $3,000 per annum, and to work from
that time until November 1, 1886. The plaintiff commenced
the service and continued therein, without further contract,
until May 1, 1887. In March, 1887, the defendants notified
the plaintiff that they should dispense with his services on the
first of the succeeding May; but the plaintiff protested against
his dismissal, and claimed that his employment was from year
to year, and that he could not legally be dismissed until the
expiration of the year. The plaintiff left the defendants'
service, by their direction, on May 1, 1887, and obtained other
employment, for the balance of the year, at the rate of $2,000
per annum. He now claims as damages the loss incurred from
the difference in his compensation for the latter portion of the
year.

In reference to the contract of employment, the plaintiff's
amended complaint alleged " that heretofore, and on or about
the 1st day of November, 1886, the defendants employed the
plaintiff for the period of one year at a salary of $3,000 per
year." This allegation was denied by the answer. The plain-
tiff claims to support this allegation, from an implication aris-
ing from his continued service without objection, after the
expiration of his term of service under the express contract.
The only witnesses testifying to the original contract were the
plaintiff and the defendant, James G. Fitzpatrick, and they

differed in some respects as to its terms; but agreed as to the fact of a contract, the amount of compensation per annum and the services actually rendered by the plaintiff. Upon the point of difference, the plaintiff testified that on or about the 15th day of October, 1885, he contracted to work for the defendants in their business for a period of one year therefrom at the rate of $3,000 per year, and continued to labor in their employ without further agreement until May, 1887, when he was discharged. When asked on cross-examination why he swore in his original complaint that he contracted to work for one year from November 1, 1885, he replied : " Merely, it was a customary thing to say the first of November or from the first of November, and not because my engagement was made then ; we are apt to speak of our engagements as being from the first of November." The defendant testified : " I remember making an engagement with Mr. Adams in October, 1885. I believe it was consummated some days before the fifteenth of October, but it commenced on the 15th or 16th of October, 1885, for twelve and one-half months from the fifteenth of October until the first of November of the following year at three thousand dollars a year." He further testified, as a reason for commencing October fifteenth, that " I said I couldn't engage him if he couldn't set in, because we usually begin our business on the first of November, and we terminate our business on the first of November." * * * " It was twelve and one-half months, because we would not have any arrangement terminate during the month of October." The undisputed evidence also shows that this contract was fully performed by both parties up to the 1st day of November, 1886, and the plaintiff then continued to work without further arrangement to the time of his discharge.

The referee found, as a fact, " that the agreed term of such employment was from the sixteenth day of October, 1885, to the first day of November, 1886 ; that the agreed salary to be paid the plaintiff was the sum of $3,000 per year, and that the employment was entered into by the plaintiff, under said agreement, on the fifteenth day of October, 1885; that after the

expiration of the term of service of the plaintiff under the agreement aforesaid, he continued in the employ of the defendants, rendering like services and receiving a like salary without any other or further agreement between them as to the hiring or the terms thereof;" and he also found, as a conclusion of law, " that the plaintiff, having continued in the service of the defendants after the term agreed upon had expired, without any express contract, the agreement for services and for payment therefor was, by implication of law and the acquiescence of the parties, renewed for the period of one year from November 1, 1886, upon the same terms." The referee awarded the plaintiff the difference between the rate of $2,000 and $3,000 per year, as damages for breach of contract, for the period between May 1 and November 1, 1887.

The defendants excepted to the finding of the referee holding that a renewal of the original contract for another year was effected by the continuance of the plaintiff in the defendants' employ after the term of the original contract expired; and this exception presents the only point worthy of notice on this appeal. The defendants' contention in support of this exception, is that the original contract, being for a year and fifteen days, any contract to be implied therefrom must necessarily be for a similar term, and such term, not being capable of performance within a year, would be void under the Statute of Frauds. This contention is founded upon an erroneous assumption and, therefore, falls with the hypothesis upon which it is predicated. The contract in this case was equivalent to a general hiring, which means from year to year. It is true that the original contract, so long as it remained executory, was void and unenforceable; but having been voluntarily performed by both parties, neither could afterwards be heard to allege its invalidity, and it controlled the terms of service and compensation under it, as against both parties, as well as afforded an authority from which the intention of the parties in relation to a further contract could be inferred. In other words, after execution it was to all intents valid. (*Stone* v. *Dennison*, 13 Pick. 1; *Dodge* v. *Crandall*, 30 N. Y. 294.)

The evidence, as well as the finding of the referee, showed that the parties originally contemplated a hiring for a year, and this is strengthened by the fact that an annual compensation was agreed upon. (*Fawcett* v. *Cash*, 5 B. & Ad. 904; *Emmens* v. *Elderton*, 4 H. of L. Cases, 640.)

This evidence clearly authorized the finding of a renewal of the contract for one year, and this applies as well to the rate of compensation as the term of service. This conclusion seems to be fully supported by the authorities.

The rule in Reeve's Domestic Relations (4th ed. 431), is stated as follows: "When one serves another under a contract for a year's service and holds over, continuing in the same service after the expiration of the year, there is a presumption, analogous to the presumption in the case of yearly leases, that the parties assent to the continuance through another year of the contract of service." (*Sims* v. *Wayne Co.*, 58 Mich. 503; *Tallman* v. *Suffolk Mfg. Co.*, 106 Mass. 56; *Moline Plow Co.* v. *Booth*, 17 Ill. App. 574; *Wallace* v. *Floyd*, 29 Penn. 184.) In each of the cases cited the rule was applied to the term of service as well as rate of compensation. Schouler's Domestic Relations (607) states the rule as follows: "If the hiring be general without any particular time limited, the old law construes it into a year's hiring. But the equity of this rule extended only to such employment as the change of seasons effected, as when the servant lived with his master, or worked at agriculture. By custom such contracts have become determinable in the case of domestic servants upon a month's notice, or what is an equivalent, payment of a month's wages, yet as to hiring in general the rule still is that if the master and servant engage without mentioning the time or frequency of payment, it is a general hiring, and, in point of law, a hiring for a year. (*Fawcett* v. *Cash*, 5 B. & A. 904; *Lilley* v. *Elwin*, 11 Ad. & El. [N. R.] 742.) Custom modifies this principle and the date and frequency of periodical payments are material circumstances in each case. The principle of yearly hiring is applicable to all contracts of hiring and service, whether written or unwritten, whether express or implied,

and whatever the nature of the services, its modifications arise whenever the contract contains stipulations inconsistent with its application, or when, from some well known custom on the subject, the parties may be considered to have contracted with sole reference to such customs. In this country, at least, if a contract for hiring is at so much per month, it will readily be presumed that the hiring was by the month, even if nothing was said about the term of service." It is stated in Wood's Master and Servant: "When a person has been employed by another for a certain definite time at fixed wages, if the services are continued after the expiration of the term, in the same business, it is presumed that the continued services are rendered upon the same terms." (§ 96.) In Smith's Master and Servant (41) it is said that "when no time is limited, either expressly or by implication, for the duration of a contract of hiring and service, the hiring is considered a general hiring, and, in point of law, a hiring for a year. This rule is applicable to all contracts of hiring and service, whether written or unwritten, whether express or implied, and whatever be the nature of the service." Story on Contracts (§ 962c) states the rule to be : "When there is a general hiring, nothing being said as to its duration, and no stipulation as to payments being made which may govern its interpretation, the contract is understood to be for a year, and the reason for this rule is said to be that both master and servant may have the benefit of all the seasons. This rule applies to the hiring of all menial and household servants, trade servants, reporters of newspapers, servants in husbandry," etc. "But when wages are payable at a stipulated period, as per week, or month, or half year, such circumstances, standing alone, indicate that the hiring is for such a period." (§ 962d.)

The rule as stated in Addison on Contracts (684), is "when the employment of a servant is of a permanent nature, and annual wages are reserved, the hiring is a yearly hiring; and when the servant is not a household or menial servant, the hiring cannot be put an end to by either party without the

consent of the other before the termination of the current year."

The following cases may be referred to as illustrations of the rule: *Mansfield* v. *Scott* (1 Clk. & Fin. 318); *Fawcett* v. *Cash* (5 B. & Ad. 904); *Beeston* v. *Collyer* (4 Bing. 309); *Collins* v. *Price* (5 id. 132); *Grover & Baker S. M. Co.* v. *Bulkley* (48 Ill. 189); *New Hampshire Iron Factory Co.* v. *Richardson* (5 N. H. 294); *Vail* v. *Jersey Little Falls Mfg. Co.* (32 Barb. 564); *Wallace* v. *Devlin* (36 Hun, 275); *Greer* v. *People's Telephone & T. Co.* (20 J. & S. 517); *Bleecker* v. *Johnson* (51 How. Pr. 380); *Hodge* v. *Newton* (14 Daly, 372); *Huntingdon* v. *Claffin* (38 N. Y. 182); *Smith* v. *Velie* (60 id. 110).

No question can arise as to the sufficiency of the evidence to sustain a finding that the parties intended a yearly hiring by a continuance of the service after the expiration of the original term; but a *quære* has been suggested, whether this inference arises by implication of law or as an inference of fact, and whether the findings may be construed as a finding of fact that the contract was renewed for another year. We are inclined to think that the findings may and ought to be so construed. No point upon this question is presented by the appellant's brief, and the question does not seem to have been raised or considered in the courts below. The referee has based his decision, not alone upon an implication of law, but also upon the assumed acquiescence of the parties in a renewal of the original contract, to be implied from a continuance of the service, without objection. This finding although in form classified as a finding of law, is, in effect, a finding of fact, and for the purpose of upholding the judgment should be so regarded. (*Parker* v. *Baxter*, 86 N. Y. 586.)

We have, therefore, determined to affirm the judgment on the ground that the contract of employment for another term of one year was a just inference of fact from all the circumstances in evidence.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.