Williams, J.
There appears to be no substantial conflict in the evidence, nor material controversy about the facts. The defendant, a corporation, was the owner of a plant for the manufacture of buggy and wagon wheels, situated near the village of Carthage, Ohio, and the plaintiff was a practical wheel-maker. The contract between these parties was entered into by the verbal acceptance on the part of the defendant, through G. H. Burrows, its president, of the following written proposal of the plaintiff:
“Carthage, Ohio, April 5, 1892.
Mr. G. H. Burrows,
Cincinnati, Ohio.
Dear Sir:—
For the privileges and prices herein named, I will agree to take charge of and run your factory at Carthage, by or on contract work.
1. I want full charge of the factory, and management of the business as far as manufacturing goes. I mean by this that Iwant charge of the buying of all merchandise, supplies, etc., or rather that I must be consulted as to what we buy, where we buy it, and what we should pay for it.
2. I want full charge of all employes. I mean that all help employed or paid by you will be subject to my orders just the same as those employed and paid by me, except in one instance, or rather one capacity, and that is, that the man or men you may have to inspect and receive the wheels, him or them to have full say, and right to demand a good standard grade of work and I will insist on him not receiving, unless it is right, as my responsibility ceases *608 as far as the work is concerned, when he receives it. I will he personally responsible and will answer to you for the general management of the business. My aim will be that wiiat benefits the business, benefits me. I don’t ay ant you to get the impression that I am trying to dictate everything. You know that every business must have a head, and Carthage factory is not large enough for more than one.”
Here follow's a descriptive list of w-heels proposed to be manufactured, with price for each class or description of Avork, which, being long, and unimportant in the disposition of the case, is omitted. The contract then proceeds:
“I w'ould expect you to pay for the following help: Shipping and handling wiieeds after they are received. Inspecting or receiving Avheels, also all office help and night watchman.
In making this agreement or contract, I will Avant you to guarantee me $3,000.00 per year, a proportion of this amount to be paid me each pay day and a settlement to be made at the end of each year, and if I should make more, than the above guarantee, the difference be paid me at the end of each year wffien settlement is made.
Yours Truly,
P. J. Kelly.”
The acceptance of this proposal wrns made sometime between its date and the first day of May, following, at Avhich time the plaintiff, under the agreement thus made, entered into the employment of the defendant, and so continued until the 3d day of November, 1893, wiien he Avas informed his services Avere no longer needed. The only cause assigned for his discharge Avas that, owing to the then prevailing depression of business the defendant could not afford *609 to pay the prices named in the agreement, and it was necessarytoreducethe prices in order to compete with other like products in the market. The defendant had .previously requested thfe plaintiff to reduce Ms prices, and he consented to make a reduction, but not an amount satisfactory to the defendant. The plaintiff has been paid all that was due him up to the time of his discharge; and the damages he seeks to recover in this action are made up of §1,500.00, being one-half of the amount of the guaranty of §3,000.00 referred to in the contract, and which he claims for the six months following the date of his discharge, and the further sum of §2,000.00 which he claims he could have made as profits under his contract during that period, in addition to the sum so guaranteed, making in all §3,500.00, for which, with interest, from November 1, 1893, he asked judgment. On the trial, to prove his profits, the plaintiff gave evidence tending to show the number of wheels that were turned out at the defendant’s factory during the six months following his discharge, and testified that his profits, if he had been allowed to make them, would have exceeded the amount he claimed in his petition. Evidence was also given tending to show the number of wheels made, and the plaintiff’s profits on them, prior to his discharge. The jury gave the plaintiff a verdict for §4,095.00, being the full amount claimed, with interest. The reversal by the general term, of the judgment rendered on the verdict, was upon the grounds, (1) that the contract did not constitute an employment for any definite time, and therefore, the plaintiff was subject to discharge at the will of the defendant, and (2) that the evidence to prove profits on wheels made after plaintiff’s discharge was inadmissible.
*610 We are unable to concur in the first ground stated upon which the judgment recovered by the plaintiff was reversed; and are disposed to adopt the construction of the contract advocated by the plaintiff, which, on the trial was, and here is, that under it his employment was for at least one year; and that, having continued in such employment after the end of' the first year without any new arrangement, a contract arose for the second year upon the same terms. There seems to be a want of harmony in the decisions in regard to the effect of a contract of hiring at a specified rate of compensation per year, some holding that such stipulation imports a hiring for a year, and others the opposite. We find it unnecessary here to consider that question. It is settled that express words that the contract shall continue for a year are not essential to constitute an employment for that period. Bascom v. Shillito, 37 Ohio St., 431. And, in the interpretation of contracts of this kind, as well as of all others, none of their provisions should be ignored or overlooked, that serve to indicate the intention of the-parties. The language of the contract in question, by which the defendant agreed to guarantee to the plaintiff the sum of $3,000.00 per year, is not an agreement to insure a compensation at a specified rate per year, but is an undertaking that the plaintiff shall receive the gross sum of $3,000.00 for a year; and the further language that a portion of this sum shall be paid to the plaintiff “each pay day, and a settlement to be made at the end of each year,” and that if the plaintiff should make more than the sum so guaranteed the difference should be paid to him “at the end of each year,” plainly imports that the settlements referred to should embrace - the transactions of an entire year, through which the *611 employment was to extend, and amounts to a contract for such employment during that year. Of the many cases which sustain that construction, but a few that are most directly in point will be noticed here. In Emmens v. Elderton, 4 H. L. C., 624, the agreement was that the plaintiff, the solicitor of the defendant, should “receive and accept a salary of £100 per annum in lieu of rendering an annual bill of costs for general business transacted by the plaintiff,” as such attorney and solicitor for the defendant. It was held, Coleridge, J., page 663, that: “The stipulation is for a salary of £100 by the year, not at the rate of £100 for a year, and it is unreasonable to infer that any less period of duration, or no period at all, was contemplated.” Following this case, it was heid in Horn v. Western Land Association, 22 Minn., 233, that: “An Appointment of an attorney ‘at a salary of $1,000 per year, payable quarterly’ and an acceptance of such appointment ‘upon the terms offered’ constitute a consummated contract of employment for at least a year. Neither party, without the other’s consent, can lawfully rescind such contract, without cause, during the year.” The court said: “The contract of employment was by the year at a fixed salary for such period, and not for an indefinite period at the rate of so much per year. This construction accords with what, must reasonably be supposed to have been the. intention of the parties, considering the nature of the employment and the character of the services agreed to be rendered.” In Norton v. Cowell, 65 Md., 359: “An offer was made by letter to give employment to the person to whom the letter was addressed, upon terms which were fully stated; and the letter concluded, ‘Your wages will be $100.00 per month with all hotel and *612 other expenses, and if you give me satisfaction at the end of the first year, I will increase your salary accordingly.’ ” ■ The proposal contained in the tetter was accepted. The court held: “that the letter and its acceptance, by legal construction, constituted a contract of hiring for one year, and the party hired having been discharged without justifiable cause, before the expiration of the year, was entitled to recover the balance of the year’s wages, he having been paid to the date of his discharge.”
It is generally accepted as an established rule that, where there is a contract of hiring for a year and at the expiration of that time the employe is continued in the same service of the employer without any new or different arrangement, a contract for another year, upon the same terms and conditions, arises by implication of law. In Adams v. Fitzpatrick, 125 N. Y., 124, it is held that: “Where one enters into the employ of another, under a contract for one year’s service, at a yearly salary, and continues in the employ after the expiration of the year, the presumption is that the parties have assented to a continuance of the service for another year at the same salary.” . A mini-her of authorities on this point are collected in the brief for the plaintiff in error. They rest upon the same principle that when a tenant holds over after the expiration of a lease for a year, without objection by the landlord, a tenancy is created for another year upon the terms of the original lease. Railroad Co. v. West, 57 Ohio St., 161.
The discharge of the plaintiff before the end of the second year, upon which he had entered, appears to have been without legal cause, and a right of action thereupon accrued to him against the defendant for a breach of contract.
*613 The proper measure of the plaintiff’s recovery, however, as we interpret the contract, was largely exceeded by the amount awarded him by the verdict and judgment in special term. The plaintiff was neithér bound nor authorized to make any specified number or quantity of wheels, nor to operate the factory to any given capacity. And, it is a conspicuous feature of the contract, that it imposes no obligation on the defendant to supply material or means for the manufacture of any quantity or number of wheels, nor to keep the factory in operation for their manufacture. The only provisions of the contract on the subject are contained in the clauses numbered 1 and 2 already quoted. It will be noticed that the final and only obligatory provision in the first clause, as therein explained, is that the plaintiff should be consulted concerning what material should be bought, where it should be bought, and the prices that should be paid; and the binding provision of the second clause is, that the plaintiff should have control of certain help employed by the defendant. By neither provision was the defendant bound to buy any material, nor supply any help, nor keep its factory in operation. What should be done in these respects was left entirely to the defendant’s own option. It might, as it chose, suspend the operation of its factory as often, and for such periods of time as it deemed best, or supply just such material and means for running it, or none at all, as should be deemed proper by the defendant. The protection afforded the plaintiff by the contract, in either case, was the amount of compensation guaranteed to him for the year; and that constituted the only source of his compensation when the defendant, in the exercise of its option in that respect, should *614 decline.to furnish him the means and opportunity to manufacture the designated articles in such quantity that, at the stipulated prices, would amount to more than that sum. This appears to be the construction which the parties placed upon' their agreement. The evidence shows that during the first year the factory was entirely shut down for a considerable time, and was run irregularly most of the remainder of that year, and it was not in operation over six weeks of the first half of the second year, that is, up to the time of the plaintiff’s discharge. And the testimony of the plaintiff on this subject was to the effect that he recognized the right of the defendant, under the contract, to shut down the factory at any time, and if the defendant did not see fit to start up, he relied entirely on the guaranty for his compensation. This being so, it seems unimportant, with respect to the compensation of the plaintiff, whether he is relieved from the performance of work under the contract for a given time, by the suspension of operations of the factory, or by the termination of his employment for a like period. Substantially, the consequences resulting to the plaintiff in the latter case are not different from those of the former. The supposed product of the factory that might have been turned out by the plaintiff during the six months following his discharge, if the defendant had furnished him during that time the help and material he desired, could not properly be made the basis for estimating his damages, for, as has been seen, the defendant was under no obligation to provide him with such means of manufacture, or the use of the factory for that purpose, and unless the defendant voluntarily chose to furnish these, the plaintiff’s only compensation was that fixed by the guaranty; and, that the defendant did not so choose. *615 Is shown by the fact of the plaintiff’s discharge. Nor, for the same reason, could the plaintiff’s damages be estimated upon the basis of the output of the factory under the management and by the labor of others whom the defendant saw proper to employ. It was only when the plaintiff, with the means and opportunity which the defendant should choose to furnish him, should, in the language of the contract, “make more” than the amount of the guaranty, that he was entitled to demand more. So that, but for the provision of guaranty contained in the contract, the plaintiff’s damages would have been nominal merely. Hence, having been paid in full to the time of his discharge, the proper measure of his damages is the proportion, for the sis months foliowing his discharge, of the guaranteed yearly compensation, which amounts to fifteen hundred dollars, on which he is entitled to interest from May 1, 1894. Our view of the case renders it unnecessary to consider the competency of certain testimony given by the plaintiff to prove what he claimed would be the profit he could have earned during the last sis months of the contract, though it is clear, we think, that if the case were one in which such profits could be allowed, the testimony, in several material particulars, was incompetent, and the objections were sufficiently made.
As the contract itself furnishes with certainty the legal measure of the plaintiff’s damages, the judgment of the general term will be reversed, and that of the special term modified by reducing the amount to $1,500.00 with interest from May 1, 1894, to the first day of the term at which the judgment was rendered; and the judgment for that amount will bear interest from that time.

Judgment accordingly.