(117 App. Div. 97)

## SCHRADER v. FRAENCKEL.

(Supreme Court, Appellate Division, First Department. January 25, 1907.)

1. FRAUDS, STATUTE OF—CONTRACT OF EMPLOYMENT—PERFORMANCE.

Where an oral contract of employment for more than a year had been voluntarily performed by both parties, neither could afterwards allege its invalidity under the statute of frauds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, § 337.]

2. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—RENEWAL.

Where an oral contract of employment for more than a year was voluntarily performed by both parties, and thereafter renewed for a year, the contract as renewed, though originally unenforceable, fixed the rate of compensation as well as the term of service.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 86.]

3. JUDGMENT—CONFORMITY TO PLEADINGS—ACTION FOR COMPENSATION—QUANTUM MERUIT.

Where, in an action for services, plaintiff's counsel, on being granted leave to amend his complaint, stated that the theory of his action was quantum meruit, plaintiff was thereby precluded from recovering on an express or implied contract fixing the value of his services, but could only recover such sum as his services were reasonably worth.

4. Master and Servant—Compensation—Determination of Profits.

Where, in an action for services on a basis of 15 per cent. of the net profits, plaintiff testified that it was part of the agreement that the net profits should be ascertained by the same method that defendant had been in the habit of ascertaining such profits in the past, which involved the charging of interest at 6 per cent. on the capital invested in the business, plaintiff was not entitled to object that such charge was made in computing the profits in which he was entitled to share.

5. Same.

During the negotiations preceding plaintiff's employment, defendant offered to pay him a salary based on 15 per cent. of the profits of the business, and authorized plaintiff to draw $3,000. Plaintiff wanted $4,000, to which defendant replied that whatever amount was fixed would be charged to the expense account, to which plaintiff assented, and the sum was thereupon fixed at $4,000. *Held*, that plaintiff, in the accounting of profits, was not entitled to object to the charging of $4,000 drawn by him, as an expense of the business.

Houghton, J., dissenting.

Appeal from Order Entered on Report of Referee.

Action by Otto C. Schrader against Richard H. Fraenckel. From a judgment entered on a referee's report in favor of defendant, plaintiff appeals. Affirmed.

See 99 N. Y. Supp. 137.

Argued before McLAUGHLIN, PATTERSON, INGRAHAM, CLARKE, and HOUGHTON, JJ.

L. E. Warren, for appellant.

James Allison Kelly, for respondent.

INGRAHAM, J. The complaint alleges an agreement made on or about January 1, 1900, by which the defendant employed the plaintiff as a salesman, and agreed to pay for the services to be by him rendered 15 per cent. of the profits of said business during each and every year that the plaintiff should remain in the defendant's employ, and the defendant guarantied that the plaintiff's 15 per cent. of said profits should not amount to less than $4,000 per annum, and that any excess over and above the said $4,000 should be paid to the plaintiff at the end of each and every year, or at such time as the plaintiff and the defendant should terminate said agreement; that in pursuance of said agreement the plaintiff, on the 1st day of January, 1900, entered into the defendant's employ, and continued in such employ under said agreement from January 1, 1900, to December 31, 1903; and that the amount of 15 per cent. of the said net earnings was in excess of that actually paid to the plaintiff, and the complaint alleges upon information and belief that the 15 per cent. of the profits of the said business amounted to $36,000, and demanded judgment for the sum of $20,000. The answer denied all the allegations of the complaint, and then alleged that any agreement, under and by virtue of which the plaintiff was and remained in the employ of the defendant, was not to be performed within one year from the making thereof, and that the agreement was not in writing, and therefore was void under the statute of frauds; and it was further alleged that for the services rendered by the plaintiff he had been fully paid. On the trial the plaintiff moved to amend the complaint by alleging that the contract was made in the

month of November, 1899, to commence on January 1, 1900, and to continue for a period of one year, or for a longer ·period, if both the plaintiff and defendant so desired, and by inserting the allegation that the services so rendered were reasonably worth the sum of $36,000. The referee stated to counsel for the plaintiff that, "in the event of the court allowing the amendment which has been moved by you, is the theory of your action one to recover the reasonable value of the services rendered by the plaintiff, or do you sue to recover the contract price as such?" Whereupon counsel for the plaintiff stated: "I sue to recover the reasonable value of services." · By the referee: "And the theory of your recovery would be the quantum meruit?" To·which the plaintiff answered, "Yes," and the motion to amend the complaint was then granted. The trial then proceeded; the plaintiff introducing evidence that the value of the plaintiff's services was from $8,000 to. $12,000 a year. The evidence given on behalf of the defendant was that the plaintiff's services were worth from $2,000 to $3,000 a year. The plaintiff's testimony as to the contract was that the defendant offered the plaintiff 15 per cent. of the profits of the business, the plaintiff to have the drawing account, the amount of which was not stated, and that the plaintiff stated that he would think it over; that the next day the plaintiff told the defendant that he would accept the proposition, but the drawing account was to be $4,000, and to that the defendant agreed; that this conversation was in November, the contract to begin on the 1st of January, 1900; and that on the 1st day of January, 1900, he commenced under the contract and continued for four years. The defendant testified that he offered to give the plaintiff $3,000 per year and a chance to make more, giving him 15 per· cent. of the net profits; that the plaintiff said that he would like to have the amount of $4,000 sure, and the defendant replied:

"In a good year, you will make less if the sum is $4,000 than with $3,000, because whatever amount we fix upon will be charged to expense account."

The plaintiff said that he didn't mind; that he wanted $4,000; that he would rather have $4,000 sure; that the defendant then said:

"I will, of course, make my balance sheets as I have always; as I have always done heretofore."

The referee found that early in November, 1899, defendant by a verbal agreement employed plaintiff as a salesman, his services to begin January 1, 1900, and to continue a year or longer at a salary of $4,000 per year, and so much of 15 per cent. of defendant's net profits as might exceed that sum in any year estimated as the defendant had always estimated net profits in the past, and the plaintiff's salary to be charged to the expense account of the business in estimating net profits. He further found that the·plaintiff commenced his employment with the defendant under his contract on the 1st day of January, 1900, and continued to December 31, 1903, and was paid by the defendant $4,000 in the year 1900, and $4,500 in each of the following years, making the total amount paid for the four years' services $17,500; that during these four years the plaintiff accepted what was paid without objection, and without a request or demand for more; that on the

1st day of January, 1904, the defendant formed a copartnership, and the plaintiff continued with the new firm at a salary of $2,500 a year, without commission or share in the profits, which he accepted without effort to better his position elsewhere, and finally left the employment in this copartnership in July, 1904; that the reasonable value of the plaintiff's services during the four years of employment by the defendant was not more than the amount actually paid to him during that time; that 15 per cent. of the net profits of the business, made up as the defendant had been in the habit of making up his accounts, was $14,939.04; that in making up these accounts the defendant had charged as an expense to the business interest on the capital invested in the business the sum of $36,418.38, 15 per cent. of which would have been $5,462.75, and in estimating the net profits the amount of $17,500 paid to the plaintiff under this contract was also charged as an expense, 15 per cent. of which would be $2,625, and the plaintiff claims that these two amounts should be added to the $14,939.04 on account of his 15 per cent. of the net profits; that in each of the years 1901 and 1903 the defendant made a statement to the plaintiff as to the net profits during the year, which showed that 15 per cent. of the net profits was something more than the $4,000 that plaintiff had been paid, and that the defendant stated that he would make the amount of the plaintiff's interest $4,500 a year, which was accepted by the plaintiff without objection, and that in the year 1902 the amount of the 15 per cent. net profits was less than $4,000, but that the defendant stated to him that he would make the amount the same as the year before, viz., $4,500, which the plaintiff accepted without objection; that the methods by which these net profits had been arrived at, namely, the charge of interest on capital invested and the amount paid the plaintiff on what he called his drawing account was charged as a part of the expense of the business, appeared upon both the journal and ledger of the defendant's business during the whole period of the plaintiff's employment; and that during the whole period of the plaintiff's employment he had free and unrestrained access to and liberty to examine all of the defendant's books of account, and he did examine them.

The referee also found that in December, 1902, S. S. Fritz & Co. owed the defendant something over $18,000, and that there was a settlement of that indebtedness made, by which S. S. Fritz & Co. paid to the defendant one-half cash and one-half preferred stock of the S. S. Fritz Company, organized to continue the Fritz & Co.'s business; that the stock given to the defendant was of the par value of $9,000; that this company continued to deal with the defendant, and subsequently, in the year 1903, it owed the defendant over $37,000, the greater portion of which was long overdue and which the defendant was unable to collect; that he continued business with this corporation, and from time to time made collections from it, but that at the time of the trial the corporation still owed him over $23,000 which was overdue and which the defendant was unable to collect; that this stock paid one year a dividend of 6 per cent., but had paid no other dividends; and in the year 1903 the defendant marked its stock off as valueless, and it was not considered in estimating the amount of net profits to which the plaintiff would be entitled.

The defendant testified that he considered the stock valueless, and that he had endeavored to sell it without being able to obtain a bid of 25 per cent. of its par value. Assuming that this stock was worth 25 cents on the dollar, which would be the highest price that it could be estimated at, it would be of the value of $2,250. The 15 per cent. to which the plaintiff would be entitled would be $337.50. The total amount of the net profits, therefore, according to the plaintiff's claim, would be $14,939.04, the amount of the plaintiff's 15 per cent. of the net profits according to the balance sheets made up by the defendant, $8,037.75, 15 per cent. of the amount charged for interest on the defendant's capital invested in the business, $2,625, 15 per cent. of the amount paid to the plaintiff for his drawing account, and, $337.50, his proportion of the value of this $9,000 stock of the S. S. Fritz Company, making in the aggregate $25,979.29, of which there has been paid $17,500.

The referee found as a conclusion of law that the contract between the plaintiff and the defendant was void under the statute of frauds; that, the plaintiff having failed to establish that the services rendered by him were worth more than the amount paid to him by the defendant, the plaintiff was not entitled to recover in the action; and that, as all the material issues in the action had been resolved in the defendant's favor, he was entitled to judgment dismissing the complaint, and for the costs of this action. The referee in his opinion held that a contract void under the statute of frauds could not be considered as proof of the value of the services rendered in pursuance of such a contract, and that the contract relied upon by the plaintiff could not be considered as determining the value of the defendant's services rendered under it, and he therefore disregarded the agreement and the evidence in connection therewith. But, for the amendment of the complaint on the trial, I think the plaintiff would have been entitled to recover under the contract.

In Adams v. Fitzpatrick, 125 N. Y. 124, 26 N. E. 143, the contract was made on October 15, 1885, at the rate of $3,000 per annum, to work from that time until November 1, 1886. The plaintiff commenced the services and continued to labor in the employ of the defendants until May, 1887, when he was discharged. The referee found that the terms of employment were from the 16th day of October, 1885, to the 1st day of November, 1886, at an agreed salary of $3,000 per year; and that after the expiration of this term he continued in the employ of the defendants, rendering like services and receiving a like salary, without any other or further agreement between them as to the hiring or the terms thereof. In speaking of the contract, the court said:

"It is true that the original contract, so long as it remained executory, was void and unenforceable, but, having been voluntarily performed by both parties, neither could afterwards be heard to allege its invalidity, and it controlled the terms of service and compensation under it, as against both parties, as well as afforded an authority from which the intention of the parties in relation to a further contract could be inferred. In other words, after execution it was to all intents valid."

It was further held that the evidence clearly authorized a finding of a renewal of the contract for one year, and that this applies as well as

to the rate of compensation as to the term of service; but by the
amendment to the complaint the action was changed from a cause of
action on contract to cause of action on quantum meruit or for the value
of the plaintiff's services. Upon the evidence the referee was justified
in finding that the value of the services rendered was not in excess of
the amount actually paid to him in the absence of a contract fixing the
amount to be paid. If the amendment itself would not be sufficient
to justify this conclusion, the express stipulation of the plaintiff's
counsel when the amendment was allowed that the action was thereupon
based, not upon an express contract, but upon quantum meruit would
prevent the plaintiff from recovering upon an express or implied con-
tract fixing the value of the services. The plaintiff thus having elected
to stand upon proof of the value of the services rendered, and the
referee having found that the value of the services did not exceed the
amount actually paid to him, and that finding being sustained by the
evidence, I do not see how we can reverse the judgment. Assuming,
however, that the plaintiff is entitled to recover under the contract as
found by the referee, I do not think that he has established that he
is entitled to a judgment in his favor.

We will consider the three items to which attention has been called.

First, as to the charge for interest upon the capital invested in the
business in determining the net profits. The plaintiff expressly swore
that it was part of the agreement that the net profits should be ascer-
tained by the same method that he had been in the habit of ascertain-
ing his net profits. When this contract was made, the plaintiff was
actually in the defendant's employ. I think it can be fairly inferred that
under such circumstances, considering the nature of the employment,
the plaintiff was familiar with the methods that the defendant had
adopted in ascertaining the net profits of the business from year to
year, but whether he was or not the contract was to pay the net profits
ascertained by the method that had been agreed on. It appeared from
the evidence, and the referee found, that these charges of interest upon
the amount of capital invested in the business was the customary
method by which the defendant had estimated the profits of the business
from year to year. So that plaintiff continued in the employment under
an agreement by which he was to have an interest in the net profits
made up as the defendant had been in the habit of making up his ac-
counts from year to year in ascertaining the net profits of the business;
and thus, at the end of the first year, when the accounts were made up,
it appeared that the net profits of the business had been ascertained
upon this method adopted by the defendant, of which the plaintiff had
knowledge. The account showing the net profits of the business was
furnished to the defendant, and he received his compensation based
upon such computation. He then continued in the business upon an
implied agreement that he was to receive the same compensation that
he had received under the contract for the year that had been com-
pleted; but the agreement necessarily involved the method by which
the net profits were to be ascertained. At the end of the second year,
when it appeared from the statement of the defendant's business that
the plaintiff would be entitled to a small sum of money over and above

the amount that he had withdrawn, not amounting to $500, and that the defendant had stated that he would allow him $500, although the amount he was entitled to receive was not as much, he acquiesced in that statement and accepted the $500, and this was repeated at the end of each of the following years that the plaintiff remained in the defendant's employ. It seems to me quite clear that under these circumstances the contract that was to control for the succeeding years was based upon the contract as to the method by which the net profits were to be ascertained, and which had been confirmed by the actual construction of the parties under it, and by this contract both parties were bound.

In relation to the second claim of the plaintiff, that it was improper to charge the amount actually paid to him as an expense to the business before ascertaining the amount of the net profits, by the contract as sworn to by the defendant, when the parties were determining whether or not plaintiff should draw $3,000 or $4,000 a year, defendant stated that "whatever amount we fix will be charged to expense account," and that in reply to that the plaintiff said, "I don't care; I would rather have $4,000 sure," to which the defendant assented, and the referee has found that the contract was according to the defendant's testimony. Here was an express agreement by which the plaintiff's salary was to be charged as an expense of the business, and that what he would be entitled to be paid would be estimated upon the net profits after treating the amount actually paid him as a disbursement, and this charge was also assented to by both parties.

In relation to the stock of the S. S. Fritz Company which the defendant charged off as a total loss in 1903, the utmost that the plaintiff could claim was that it should not be considered a total loss, but should be treated as an asset of the firm at its actual value. The testimony is undisputed that the defendant had tried to sell it at 25 cents on the dollar, and had been unable to get a bid for that amount. It therefore could only be treated as an asset and the defendant required to account for it as worth 25 cents on the dollar. Assuming that it should be treated as an asset to that extent, the plaintiff would be entitled to be credited with the sum of $337.50; but as he was paid a sum largely in excess of that amount, over and above the net profits to which he was entitled under the contract, it did not appear that the plaintiff was entitled to recover.

Although it would appear from his opinion that the referee had an erroneous view of the law to be applied in ascertaining the right of the plaintiff, upon the facts as found by the referee, I do not see that the referee could come to any conclusion considering the form of the action which resulted from the amendment of the complaint other than that reached by him, and, as there appears to be no error in any ruling of the referee upon the trial which would justify a reversal of the judgment, the judgment should be affirmed, with costs.

PATTERSON, P. J., and McLAUGHLIN and CLARKE, JJ., concur.

HOUGHTON, J. (dissenting). I think there should be a new trial granted in this case on the ground that the trial had before the referee was upon a wrong theory.

The referee states by his opinion that he did not consider in any manner the agreed compensation provided by the verbal contract. Even if the contract was void by the statute of frauds and could not have been enforced as an executory contract, it having been executed by the parties, the agreed compensation provided thereby was the measure of the services theretofore performed, or at least evidence of the price which the parties had agreed upon, and should have been taken into consideration by the referee in rendering his judgment. Adams v. Fitzpatrick, 125 N. Y. 127, 26 N. E. 143.

The refusal of the referee to find the third request of the plaintiff that such a contract was entered into is sufficient indication that he tried the case upon a wrong theory, even if his opinoin cannot be used for the purpose of ascertaining that fact. The theory of the trial having been wrong, I do not think this court can say that upon the evidence, if it had been properly tried, the plaintiff established no cause of action. Manifestly the defendant would not have been entitled to charge interest on the capital as an expense of his business, unless the plaintiff had agreed to it. The referee repudiated the agreement, and allowed the defendant to charge up interest as a part of the expense of his business.

I think, too, that with respect to the $9,000 of stock the defendant did not have the right to charge that up as a total loss, inasmuch as he had taken it upon his debt and it had paid one dividend and was of some value. The fact that defendant had voluntarily paid plaintiff in excess of the $4,000 did not extinguish plaintiff's claim to this asset.

I have grave doubt, too, whether under the contract as claimed by plaintiff the $4,000 of guarantied profits paid to the plaintiff was fairly proven to be chargeable as an expense of the business. The agreement as claimed was not for a salary of $4,000, but was for 15 per cent. of the profits, which were guarantied by the defendant to be at least $4,000. If 15 per cent. of the profits were less than $4,000, then, of course, the plaintiff would have no claim for further compensation. I think the total profits should have been ascertained without first deducting the $4,000.

I therefore dissent from an affirmance of the judgment.