**306** Canton Steel Ceiling Co. *v.* Duffy Malt Whiskey Co.

First Department, March, 1922. [Vol. 200

---

Canton Steel Ceiling Company, Respondent, *v.* Duffy Malt Whiskey Company, Appellant, Impleaded with the New York and Kentucky Company, Defendant.

First Department, March 3, 1922.

**Landlord and tenant — leases — contracts — agreement, not called lease, providing for storage space and services for period of one year — party holding over liable for consideration mentioned in agreement for entire second year — renewal — principle of yearly hiring applicable to all contracts of hiring and service.**

Plaintiff and defendant entered into an agreement whereby plaintiff, for a consideration of $100 per month, was to furnish defendant, for a period of one year, certain space for storage of defendant's goods, labor in handling said

goods in the course of defendant's business, and desk room for defendant's representative, plaintiff to allow such representative free access to the building during business hours and to be responsible for the goods so stored in case of loss by theft or breakage due to its carelessness. The agreement was not designated a lease nor the consideration rent. The agreement was carried out for the year and, without notice, defendant continued in possession under the agreement and paid the consideration for part of the second year when it vacated and paid nothing further. Plaintiff was not paid anything by anybody for the space and services provided for in the agreement for the remainder of said second year, although it was ready and willing to furnish said services.

*Held,* that whether the agreement is a lease with services furnished as incident thereto, or an agreement of letting in part and of furnishing services in part for the term of at least one year, the defendant by holding over renewed the agreement for a year and became liable for the consideration for the entire year.

*It seems,* that the principle of yearly hiring is applicable to all contracts of hiring and service, whether written or unwritten, whether express or implied and whatever the nature of the services.

MERRELL, J., dissents, with opinion.

APPEAL by the defendant, Duffy Malt Whiskey Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 28th day of June, 1921, upon the decision of the court rendered after a trial at the New York Trial Term, a jury having been waived and the case having been submitted on stipulated facts.

*Decker & Menzie* [*George P. Decker* of counsel], for the appellant.

*Herman Lubetkin* [*Samuel Brand* of counsel], for the respondent.

GREENBAUM, J.:

The agreement between the parties is set out in the dissenting opinion of Mr. Justice MERRELL.

In the agreed statement of facts it is admitted that " on or about the 1st day of May, 1916, the said defendant entered into possession under the aforesaid agreement, and both parties entered into the performance of the provisions thereof, and continued therein until the 30th day of April, 1917. No notice in writing of the defendant's intention to terminate this agreement was given prior to the said 30th day of April, 1917. Thereafter the said defendant continued in possession of said premises * * * under said agreement and said defendant paid the moneys stipulated by said document, without any change thereunder until the 30th day of September, 1918," when the " defendant vacated the premises."

It is also admitted that " from October 1st, 1918, to April 30th, 1919, the space reserved under the agreement set forth herein for the use of the said defendant was not rented to any other person or firm, and that the plaintiff received no rent therefor during the said period from any other person or firm, and that the plaintiff received no remuneration for the services provided for in the

**308** Canton Steel Ceiling Co. *v.* Duffy Malt Whiskey Co.

First Department, March, 1922.                    [Vol. 200

aforesaid agreement from any person or firm during the said period and that the plaintiff during all of said time was ready, willing and able to furnish said services to the said defendant as called for in the said agreement."

The sole question in the case is whether the agreement is in effect a lease notwithstanding that there are no express words therein characterizing it as such and that the plaintiff agreed to render the various services detailed in the agreement. No particular words are necessary to constitute a lease where it appears that it was the intention of one party to " dispossess himself of the premises and of the other to enter and occupy as the former himself had the right to do." (24 Cyc. 901.)

The stipulation of the parties states that " the space reserved under the agreement set forth herein for the use of the said defendant was not rented to any other person or firm." The original agreement contemplated that the defendant was to use the premises for the purpose of delivering its goods to its customers, inasmuch as it expressly states that the plaintiff was " to furnish the labor for the loading of the trucks of the customers of the Duffy Malt Whiskey Co. as the goods are called for," and further states that defendant's representatives had right of access to the building " at all times during business hours."

It is, therefore, evident that a portion of a floor was reserved to defendant for its exclusive use in the conduct of its business. We thus find all the elements of a lease of a portion of the loft or floor to be devoted to the exclusive use of the defendant. It is a matter of common knowledge that it is customary in the leasing of offices for the landlord to furnish heat and elevator service and to keep the offices clean. So, too, in the leasing of modern apartments, the landlord obligates himself to furnish a great variety of service in connection with the tenancy, as an incident of the letting.

If the relationship of landlord and tenant was created by the agreement, then upon the tenant's holding over after the expiration of the term, the law will imply an agreement to hold over for the year upon the terms of the agreement. (*Schuyler* v. *Smith,* 51 N. Y. 309.)

Appellant contends that the agreement can " no more be called a lease than it may be called a mere contract to furnish freight-handling labor." Clearly the services agreed to be rendered were entirely incidental to the leasing of a part of the plaintiff's premises.

But it happens that the law that the principle of yearly hiring is also " applicable to all contracts of hiring and service whether written or unwritten, whether express or implied, and whatever the

nature of the services, its modifications arise whenever the contract contains stipulations inconsistent with its application, or when, from some well-known custom on the subject, the parties may be considered to have contracted with sole reference to such customs." (*Adams* v. *Fitzpatrick,* 125 N. Y. 124.)

The plaintiff corporation having agreed to perform certain services, it follows in reason that the contract for the rendition of such services for at least a year implies a renewal from year to year under the facts here disclosed.

The conclusion is inevitable, whether the agreement is treated as a lease under which the lessor obligates himself to furnish incidental services or whether it was an agreement of letting in part and of furnishing services in part for a term of at least one year, that upon a holding over by the tenant and the continuance of the service, after the expiration of the term, it must be held that the agreement is renewable from year to year, subject to termination at the end of any year.

The judgment is affirmed, with costs.

CLARKE, P. J., LAUGHLIN and SMITH, JJ., concur; MERRELL, J., dissents.

MERRELL, J. (dissenting):

The plaintiff, respondent, was in possession of premises located at No. 301 West street, in the borough of Manhattan, city of New York. On the 25th day of April, 1916, plaintiff and defendant entered into an agreement in writing as follows:

"By this agreement executed on this 25th day of April, 1916, the Canton Steel Ceiling Co., a corporation of New York City, N. Y. do hereby agree to furnish space consisting of part of one floor, same to be used for storage by the Duffy Malt Whiskey Co., of Rochester, N. Y. in consideration of the sum of $100 per month same to be paid between the first and tenth of each month. In further consideration of this sum the Canton Steel Ceiling Co. agree to furnish the Duffy Malt Whiskey Co.'s representative with desk room and to allow him the privilege of the use of the telephone and access to and from the building at all times during business hours. The Canton Steel Co. also agree to furnish labor for the unloading of all cars of Duffy Malt Whiskey and to furnish the labor for the loading of the trucks of the customers of the Duffy Malt Whiskey Co. as the goods are called for. The Canton Steel Ceiling Co. agree to be responsible for goods stored in their premises in the event of loss by theft or breakage due to carelessness on their part.

"The Duffy Malt Whiskey Co. agree to continue this arrange-

**310** Canton Steel Ceiling Co. *v.* Duffy Malt Whiskey Co.

First Department, March, 1922. [Vol. 200

ment in force for at least one year and before the expiration of the year to give at least thirty days notice in writing of their intention to terminate this agreement should they desire to do so.

        " THE DUFFY MALT WHISKEY CO.

           " Thomas Brownley.

                " Charles P. Roberts,

     " CANTON STEEL CEILING CO."

Pursuant to the said agreement, both parties entered into the performance thereof and continued to perform the same for the full year ending April 30, 1917. Defendant gave no notice in writing of its intention to terminate said agreement upon the expiration of the year, but the parties continued the performance of the agreement, the defendant paying the stipulated $100 monthly until the 30th day of September, 1918, when the defendant vacated the premises and paid no further moneys to the plaintiff under said agreement. Claiming that, by such holding over after the expiration of the yearly period provided for in the contract, there was, by implication, a renewal thereof for like periods of one year, the plaintiff demanded payment by defendant of the sum of $100 per month for the months of October, November and December, 1918, and the months of January, February, March and April, 1919, and, upon defendant's refusal to pay the same, brought action to recover the sum of $700, which plaintiff claimed to be its due for rental for said seven months, constituting the balance of the year commencing May 1, 1918, and ending April 30, 1919. It was, in effect, stipulated by the parties that defendant ceased doing business and occupied no other loft and no other place of business in the city of New York after September 30, 1918.

The rights of the parties depend upon the construction of the written agreement hereinbefore quoted. The court, at Trial Term, construed the said agreement in accordance with plaintiff's claim, as a lease from year to year, and that the holding over after the expiration of the term of the original lease, without notice of intention to quit, operated as a renewal of the original lease from year to year. This court is about to concur in such interpretation. I am unable to agree with the learned trial court and with my associates that the written instrument between the parties was no more than a lease of real property, and that the well-known rule applied in cases of a lease of real property or for service, that a holding over under a lease or a continuance of employment by a servant after the expiration of the original term works a renewal by implication of the original agreement, is applicable to the agreement in the case at bar. The learned court

at Trial Term held that the instrument in question was a lease and that the services provided for therein, whereby respondent was to render services for the defendant, were merely incidental to the use of the premises. I see no more reason for such construction than to construe the instrument as one whereby the respondent agreed to perform services for the defendant in the care and disposition of its whisky, and that the furnishing of floor space in the plaintiff's warehouse was incidental to the performance of such services. It seems strange that, if the parties regarded the instrument as a lease, nowhere in the instrument should the term " lease " be used, nor the monthly consideration to be paid be termed " rental." Neither of the words " lease " nor " rental " appear in the instrument. The respondent, in the instrument, agreed to furnish a part of one floor of its warehouse as " space " for storage of defendant's commodity for a consideration of $100 per month, and in further consideration of said sum the respondent agreed to furnish the defendant's representative with desk room and to allow him the privilege of the use of respondent's telephone, and access at certain times to and from the building in which the appellant's goods were to be stored. Furthermore, the respondent agreed to furnish the labor for unloading the appellant's product from all cars, and to furnish the labor for loading the same upon the trucks of the appellant's customers as the goods were called for, and, finally, the respondent agreed " to be responsible for goods stored in *their premises* in the event of loss by theft or breakage due to carelessness on their part." And, again, the defendant, appellant, agreed to continue, not the " lease," but " this arrangement," in force for at least one year, and to give at least thirty days' notice of intention to terminate " this agreement." And here again the parties did not denominate the " arrangement " or " agreement " a lease.

It seems to me that the logical construction of the said instrument executed by the parties is that the parties intended the same to be a contract of bailment, and that the plaintiff, respondent, thereby became a bailee for hire of the defendant's merchandise. The effect of the agreement was that the respondent was to receive and store in its warehouse defendant's merchandise. Defendant's representative was to have desk room in plaintiff's building and the use of its telephone, and access to the building during business hours. The respondent was not only to furnish storage space, but was to unload the whisky from cars as it arrived and was to reload the same upon trucks of defendant's customers as the goods might be called for. The respondent was also to be responsible for the goods " *stored in their premises* " in the event of loss by theft

or breakage due to carelessness on the part of the respondent. It seems to me the last-mentioned provision was quite foreign to a contract of lease, and is entirely consistent with the theory that the respondent became a bailee of defendant's whisky. I am convinced that the agreement between the parties was more than a mere leasing of respondent's real property, and that the doctrine of renewal by implication is not applicable to said contract.

The judgment appealed from should be reversed, with costs, and plaintiff's complaint should be dismissed, with costs.

Judgment affirmed, with costs.